## SUPREME COURT.

ANDREW F. HASTINGS, receiver of the Security Insurance Company, agt. DANIEL DREW and others.

*Corporation — claims of creditors, how enforced upon its dissolution, or expiration of its charter.*

Upon the dissolution of a corporation, its contracts and liabilities are not extinguished. Creditors may enforce their claims against any property of the corporation which has not passed into the hands of a *bona fide* purchaser.

The stock and property of a corporation is deemed a trust fund for the payment of its debts, and creditors have a lien or right of priority of payment, in preference to the claims of a stockholder in the corporation.

If the capital stock and property be divided among the stockholders, leaving any debt unpaid, every stockholder, receiving his share of the capital stock out of corporate property, is held liable, *pro rata*, to contribute to the discharge of such debts out of the property or its proceeds in his hands.

A judgment recovered against a corporation is final and conclusive against stockholders, when it is sought to be enforced by action against corporate property, or its proceeds received by them.

*Miller* agt. *White* (57 *N. Y.*, 137) *distinguished.*

The defendants, being stockholders in a corporation about the time of its dissolution, took to themselves a steamboat, the property of the corporation, which they sold and disposed of to their own use. *Held,* that they were liable, *pro rata,* according to the stock held by them, to pay the claim of a creditor, existing at the time they took to themselves the property.

*New York Special Term, December,* 1874.

*William Allen Butler,* for plaintiff.

*Charles Jones,* for defendants Drew and others.

*William A. Beach,* for defendant Vanderbilt.

VAN VORST, J. — The evidence does not establish that the sale of the steamboat " C. Vanderbilt," and four-fifths of the " Francis Skiddy," made on the 15th February, 1864, was in fact perfected, or that the corporation known as the " New Jersey Steam Navigation Company " parted with its interest in said boats, in pursuance of such supposed sale.

The price bid, $85,000, by Vanderbilt was not paid to the corporation and the vessels were continued to be run thereafter in the name of the " Troy line " as before.

It is true that some of the stockholders were paid off upon the basis of the price fixed for the property by the bid of the defendant Vanderbilt, but the defendants Drew, Vanderbilt, and others, retained their interest in the corporation, and its property and assets, in proportion to the amount of their stock. They severally remained stockholders in the corporation, the charter of which did not expire until the year 1869. The defendant Drew was the president of the corporation, and the other defendants were trustees and stockholders. In the month of March, 1865, the corporation, by an instrument in writing, executed in its behalf by the defendant Daniel Drew, as president, claiming then to be the owner of the boat, bargained and sold the steamer Vanderbilt to the New Jersey Steamboat Company. In pursuance of this sale, the vessel in question passed to the latter named company. In and by the instrument of sale, the New Jersey Steam Navigation Company covenanted and agreed, to and with the New Jersey Steamboat Company, to warrant and defend the steamboat Vanderbilt, and the other matters in the instrument of sale alleged. The certificate of enrollment of the vessel, showing the title of the same to be in the New Jersey Steam Navigation Company, is formally set forth in the bill of sale. The instrument is sealed with the seal of the corporation, and in the certificate of acknowledgement, it is stated that the seal was affixed by order of the directors, for the uses and purposes expressed in the instrument, and that the same was executed by the defendant Drew, as president of the corpora

tion, by the like order of the directors. After such declarations and acts, it is too late for the defendant Drew, and his co-defendants the directors, and who were also stockholders and interested in the boat, to allege that the vessel was not then the property of the corporation who sold and transferred the same to the new corporation.

By this it is also satisfactorily shown that the transaction of the 15th of February, 1864, was not understood by the parties to be a true sale of the vessel, or that the corporation then parted with its title thereto, but that it was rather a method adopted to ascertain the *then* value of the property, as a basis of settlement and adjustment with such stockholders of the corporation as might choose then to retire.

If this conclusion be correct then the corporation was the owner of the steamer Vanderbilt on the 14th July, 1864, and was liable for the damage consequent upon the alleged sinking by her of the canal boat A. D. Merry. And so it was adjudged in an action commenced in the superior court of the city of New York, in the month of January, 1865, by the Security Insurance Company, of which the present plaintiff is receiver, against the New Jersey Steam Navigation Company, for such damage. The New Jersey Steam Navigation Company appeared in the action, and answered the complaint, the answer being verified by the defendant Drew, as *president* of the company; in which answer it was admitted that the corporation was the owner of the steamboat Vanderbilt at the time of the collision between her and the boat A. D. Merry, and that the corporation was at that time carrying on business. The issue joined in the action was afterward tried by a jury, and a verdict rendered in favor of the plaintiff therein, the Security Insurance Company, for the sum of $5,538.85, for the damages sustained by such collision.

A judgment was entered in favor of the plaintiff, against the corporation, on the 11th day of May, 1868, for the sum of $6,004.37, damages and costs, and an execution against the property of the corporation was issued upon such judg-

ment, to the sheriff of the city and county of New York, and was by him returned unsatisfied, on the 10th day of September, 1868.

It does not appear that the corporation, on the 14th July, 1864, owned any property except the steamor C. Vanderbilt, and four-fifths of the F. Skiddy. The Skiddy was afterward wholly lost. The principal portion of the property of the corporation, consisting of steamers running on the Sound, under the name of the Stonington Line, had been sold during the year 1863, and the proceeds had been distributed among the stockholders; by which proceeds they realized the par value of their shares and an excess over same of from seventy-five to ninety per cent. The Vanderbilt, as already observed, was retained by the corporation, and after the collision and whilst the action against the corporation to recover the damages for the collision was pending, was sold and transferred to the New Jersey Steamboat Company.

No provision was made by the directors of the corporation for these damages, nor were funds reserved to pay any sum which might be recovered in the action.

The proceeds of the sale of the C. Vanderbilt was received by the defendants the trustees, and who appear to have been the only remaining stockholders and solely interested in such proceeds. It was, without doubt, the duty of these trustees, to have made provision for the payment of the claim in question out of the property of the corporation. But that they did not do so, is no reason why the plaintiff in the judgment should be remediless.

It is a familiar principle in equity jurisprudence, that the stock and property of a corporation is deemed a trust fund for the payment of the debts of the corporation, and that *creditors* have a lien, or right of priority of payment in preference to any of the stockholders in the corporation. And, when a corporation is dissolved, the contracts and liabilities of the corporation are not extinguished. The *creditors* may enforce their claims against any property belonging to the

corporation which has not passed into the hands of a *bona fide* purchaser. The property itself is affected with the trust.

And, if the capital stock should be divided, leaving any debts unpaid, every stockholder receiving his share of the capital stock, would in equity be held liable, *pro rata*, to contribute to the discharge of such debt, out of the funds in his hands (*Story Equity Jurisprudence*, sec. 1252; *Wood agt. Dummer*, 3 *Mason R.*, 308; *Curson* agt. *African Comp.*, 1 *Vern. R.*, 121; *S. C.*, *Skinner R.*, 84; *Angell & Ames on Corporations*, secs. 600, 601, *and note* 1; *Bartlett* agt. *Drew*, 60 *Barb.*, 648).

The ground was not taken upon the trial by the defendants, that they had not received to their own use the steamer Vanderbilt and her proceeds, but they claimed that they were entitled to the same, exclusively, the interest of each defendant therein being in proportion to the amount of stock held by him in the corporation ;. the interest of the other stockholders having been extinguished by the payment to them, severally, of their proportion of the value of the property upon the basis fixed by the alleged sale made in February, 1864. In virtue of such sale and payment to the other stockholders, they claimed to be entitled to the boat and the right to dispose of same to their own use.

But, as we have already observed, the title to the boat remained in the corporation. It continued to be corporate property. Nothing was paid by the defendants to the corporation for such alleged purchase, and the boat remained liable for the debts of the corporation until the transfer made in March, 1865, by the corporation.

These defendants could not, although they were in fact the sole remaining stockholders, take the boat to themselves, freed from the liens of creditors, and having done so, are liable to the creditors to the value of the property so appropriated. The conveyance made by the corporation, by the direction of the defendant's trustees, and executed by the

defendant Drew, as president, inured to the sole benefit of Drew and the then stockholders and parties in interest in the corporate property.

It is objected on the part of the defendants, that the judgment recovered against the corporation is not admissible to establish any demand against them as stockholders. In support of this proposition, reference is made to *Miller* agt. *White* (50 *N. Y.*, 137). But it is to be remembered that that was an action to recover of the trustees personally, a debt of the corporation. It was to enforce a liability, in its nature penal, against the trustees, for their omission to file annual reports, by means of which they became personally liable for the debts of the corporation.

But this is a judgment creditor's action. It is not brought to enforce a personal liability against the defendants for the debts of the corporation as trustees or stockholders, but to enforce the lien of the plaintiff upon property of the corporation which has come into the defendants' hands charged with the lien. The action against the corporation was by it defended, and the judgment was recovered after a trial on the merits. As against the corporation, the debtor, the judgment is final and conclusive, and as it is sought to be enforced against corporate property, is conclusive against trustees and stockholders. In *Miller* agt. *White* (*supra*), it is said : " There is a privity of interest at most only as to corporate property. The stockholders, who in this respect stand the same as trustees, are bound by the judgment to the full extent of their interest in the company assets."

The only question really to be determined is, whether the defendants received to their own use, under the circumstances of this case, the property of the corporation, which was subject to the lien of the plaintiff's demand, and to the satisfaction of which it should, in equity, be applied.

It is important to notice in this connection, that the transfer of this boat to the New Jersey Steamboat Company was a final disposition of *the only remaining property* of the cor-

poration, and that it thereafter acquired no property, and ceased thereafter to do business, although its corporate existence continued until the year 1869.

The defendant Vanderbilt claims to have sold his interest in the boat in September, 1864, to the defendant Englis, an associate stockholder. Such sale was made after the collision in question, for which the judgment was recovered by the Security Insurance Company. Vanderbilt knew of the collision. Vanderbilt received of Englis some $30,000 for his interest in the two boats. He sold his interest subject to all liabilities; and, as he states, had nothing further to do with the boat, which, as he understood, was afterward sold to the People's Line.

There is nothing, therefore, to show that Vanderbilt received from the "corporation" any money or property, after the collision.

What he did receive was from a *stockholder* and co-defendant, for his interest, the boat yet remaining the property of the *corporation*, in whom the title was. The lien in favor of creditors followed the boat, which was afterward disposed of by Drew, and the remaining associates, to the New Jersey Steamboat Company.

This sale and disposition inured to the benefit of the defendant Drew and his co-defendants, except Vanderbilt, who is not shown to have interfered further in the matter, after he sold out to Englis, in September, 1864.

The consideration, realized on the ultimate disposition of the property to the New Jersey Steamboat Company, does not distinctly appear. But the property sold was a steamboat which had the previous season navigated the Hudson river. The sum realized by Vanderbilt for his interest in the property, in September, 1864, indicates that the vessel was of large value.

In this property, the defendants who are chargeable in this action should be held to have participated, at least, in pro-

portion to the amount of stock they severally held in the corporation.

And the defendants Drew, Englis and Norton are adjudged to contribute and pay toward the satisfaction of the plaintiff's claim in the proportion of their respective holdings of the stock of the corporation, to the whole amount of the capital thereof.

This was the rule adopted in *Wood* agt. *Dummer* (*supra*).

As to the defendant Vanderbilt, the complaint should be dismissed. This action was directed to be continued in the name of the receiver of the Security Company, by order of 3d of February, 1872. Such order was proper to prevent an abatement of the suit (*N. Y. Statutes at Large, vol.* 3, 674).

There should be judgment in favor of the plaintiff, in pursuance of the above directions.

NOTE. — *Bartlett* agt. *Drew* (57 *N. Y. R.*, 587).