WILLIAM W. WADE

*v.*

JAMES H. BUNN.

1. ESTOPPEL—*representations inducing a purchase.* Where a former owner of lots, who executed a deed for the same, leaving a blank for the grantee's name, when applied to for information as to the title, by a party about to purchase the same of one whose name had been inserted in the deed, disclaimed any title in himself, and stated that the grantee was the owner, and upon this assurance the purchase was made: *Held,* that these facts constituted a complete estoppel in equity on the original owner, and that he could not afterwards claim title.

2. CHANCERY—*establishing title by estoppel.* A court of equity has jurisdiction to establish a title to real estate by estoppel against a former owner, who, by his acts and representations, has induced another to purchase from his grantee under a void deed.

3. SAME—*ancillary jurisdiction.* If a court of equity acquires jurisdiction for any purpose, and has all the parties in interest before it, it may proceed and do complete justice to all parties, and render a decree that will carry into effect the rights of the parties.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. JOSEPH W. COCHRAN, Judge, presiding.

Messrs. McCULLOCH, STEVENS & WILSON, for the plaintiff in error.

Messrs. STARR & WEAD, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that in the year 1860, plaintiff in error was the owner of three lots in Oakland Park, in the county of Peoria, in this State; that in a trade for a patent right for a corn planter, he attempted to convey them to one Smith, and in doing so, with his wife, executed and acknowledged a deed regular in all its parts, except a blank was left to fill in the name of a grantee. The patent right belonged to Smith, who employed one Denton to sell the patent, and it was through him that plaintiff in error became the purchaser. On a division

of the proceeds of the sale between Smith and Denton, the lots fell to the latter, and he subsequently sold the lots to one Reeves, and filled his name in the deed as grantee; but Reeves becoming dissatisfied with the trade, Denton took them back, and restored the consideration Reeves had paid him, and then erased Reeves' name from the deed, and inserted his own. Afterwards, Denton sold and conveyed the property to one Coffey, who likewise sold and conveyed the lots to defendant in error, who subsequently brought ejectment against plaintiff in error to recover the lots. But on the trial, when he introduced the deed purporting to be from plaintiff in error to Denton, and it appearing that it was executed before any grantee's name was inserted, and Denton's had been afterwards written in it, the deed was rejected, and defendant in error failed in his action. He, thereupon, filed this bill to establish his title and to obtain possession of the lots. On a hearing, the court below granted the relief prayed, and defendant prosecutes error to reverse the decree.

Whilst the evidence is somewhat conflicting, we are of opinion that it is established that plaintiff in error is shown to have been estopped from asserting title or denying the title of defendant in error. It appears that defendant went to him to learn the situation of the property, when he showed defendant in error the corners, and at that time stated he had no claim to the property but a tax title. Plaintiff in error afterwards admitted to defendant in error that he had no tax title. He also stated that Coffey claimed under Denton, and was the owner. This, in part, is contradicted by plaintiff in error, but he admits he had conversations with defendant in error.

We, however, are of opinion that this testimony of defendant in error is true. Plaintiff in error made, substantially, the same statements to Comstock and Coffey. He said to the latter, that he had sold the lots to Denton, and had tried to buy them back. Coffey testified that he talked with plaintiff in error both before and after he purchased the lots of Denton, when he said he had no claim on the lots. Denton testified

that plaintiff in error went to Pekin a number of times, three or four years after he purchased the lots, to buy them back.

Plaintiff in error also admits, in his testimony, that he made the deed, and thought, at the time, that he received a full consideration for them, but says the patent right turned out to be worthless. But it was shown in evidence, that he had said to one or two persons that he got out of it with some profit. He also states, that he contracted with Denton to repurchase the lots, but he failed to consummate the sale. He denies the fact that Denton had anything to do with his trade for the patent right, except to encourage him to purchase, whilst Denton testifies that he made the sale to him.

Plaintiff in error seems to have been contradicted by each of the other witnesses in material facts, whilst defendant in error is only contradicted by plaintiff in error; hence the chancellor was fully justified in giving weight to the testimony of defendant in error rather than to that of plaintiff in error.

Again, if plaintiff in error made such statements to Coffey and Comstock, it is but reasonable to suppose he would make similar ones to defendant in error. Their evidence, indirectly, strongly supports his testimony, and being regarded as true, is it sufficient to support the decree? Plaintiff in error claims it is not, whilst defendant in error claims it estops plaintiff in error from asserting title in himself, and from denying his title.

Defendant in error swears he fully relied on the statements of plaintiff in error in purchasing, and would not had it not been for his statements, or if he had known he claimed title. Now, here were representations that induced defendant in error to purchase. Had plaintiff in error not made them, defendant in error would not have bought. The representations must have been made with a full knowledge of the facts. No one could have known them better than plaintiff in error, and defendant in error was ignorant of the true state of the facts, and was diligently and in good faith endeavoring to learn them. He repeatedly went to the proper source for the purpose, and if he failed it was the fault of plaintiff in error. Plaintiff in

error was informed that defendant in error expected to act on the information which he should receive, and was induced by the statements of plaintiff in error to act upon them, and make the purchase; and to permit them now to be contradicted and overcome would work great fraud and injustice to defendant in error. We have no hesitation in saying that these facts constitute a complete estoppel *in pais*—such an estoppel as should effectually preclude plaintiff in error from showing that his statements were not true.

The bar of the Statute of Limitations was not established. Plaintiff in error read no deed in evidence showing color of title. He did not prove payment of taxes for seven consecutive years, either under claim and color of title or otherwise. He simply showed possession for that period. and more, after he executed the blank deed. But it surely will not be contended that this proof can be regarded as establishing the bar of the statute.

It is contended that the court should have, by its decree, done no more than restrain plaintiff in error from objecting to the sufficiency of the deed in a suit at law, leaving the parties to litigate all other questions in that forum. It is only necessary to say, in answer to that position. that it is one of the oldest and most familiar rules in chancery practice, that when a court of equity acquires jurisdiction for one purpose, and has all parties in interest before it, the chancellor will proceed to do complete justice to all parties. Here, the court had jurisdiction to establish the estoppel, and having all parties in interest before it, there was ample power to proceed and settle the rights of parties, and to render a decree that would carry them into effect, which has been properly done by this decree.

Perceiving no error in the decree, it must be affirmed.

*Decree affirmed.*