THE ST. LOUIS AND SANDOVAL COAL AND MINING COMPANY *et al.*

*v.*

THE SANDOVAL COAL AND MINING COMPANY.

*Filed at Mt. Vernon January 25, 1886.*

1. CORPORATION—*grounds for dissolution.* When a corporation ceases to do business, leaving debts unpaid, and is insolvent and unable to prosecute the work for which it was organized, the court, under section 25 of the Corporation act, has the power to dissolve it.

2. SAME—*assets as a trust fund—and for whom.* In equity a corporation is regarded as a trustee, holding the corporate property for the benefit of its creditors and shareholders, which, upon its dissolution, a court of chancery will lay hold of as a trust fund, and distribute for their benefit.

3. SAME—*priority of creditors over stockholders.* Creditors of a corporation for pecuniary profit have a lien or right to priority of payment over the stockholders. The latter are the owners of the franchise, property and assets of the company which remain after its debts and liabilities are discharged.

4. SAME—*who are stockholders interested in distribution of assets.* A subscriber to the capital stock of a corporation for pecuniary gain, who has never paid anything for stock, and who neglects to pay assessments, and suffers a forfeiture for non-payment, can not be regarded as a stockholder in any such sense as to permit him to object to any disposition the court may make for the distribution of the assets of the corporation.

5. SAME—*estoppel to claim as a stockholder, as against a new company which he had sought to have organized.* A stockholder in an insolvent

corporation for mining coal, joined in a bill to have the corporation dissolved and its business closed, and was instrumental in having a receiver appointed, who made a sale and conveyance of the property, which, however, proved invalid, and he was also instrumental in organizing a new company and inducing it to purchase the property, and afterward to expend large sums of money in improving the property and developing the mine: *Held*, that under these circumstances he was estopped from asserting any interest as a stockholder of the old company, as against the new one.

6. SUBROGATION—*in favor of a new company, and against a prior corporation and its stockholders—purchase money paid by the new company discharging the debts of the older corporation.* Where a corporation has become insolvent, and ceased business largely in debt, and its property is sold under a proceeding to dissolve it, and a deed is made by the receiver which is adjudged void, and a new company, claiming title under such deed, having advanced for the purchase of the property a sum sufficient to pay all creditors in full, and which is so used, such new company will be entitled to be subrogated to the rights of the creditors of the old company, and may enforce the trust for its own benefit as *cestui que trust*, to the extent to which the purchase money discharged the debts of the old corporation.

7. On bill filed to dissolve and wind up the affairs of an insolvent corporation, its property, consisting of two acres of ground, was sold by the receiver to a person who conveyed the same to a company, which paid all it was worth, and which payment was applied in payment of the debts of the old corporation. It was *held*, that the new company being entitled to be subrogated to the rights of the creditors so paid, the receiver's sale and deed being void the court having control of the trust estate not divested by the sale, and being authorized to apply it in discharge of the debts of the insolvent company, had the power to direct the old company to convey the trust property to the new company as one of the *cestuis que trust* for whose benefit the legal title was held, providing that the stockholders constituting the second class of the *cestuis que trust*, and to whom alone the remainder of the property, if any, would belong after the payment of the debts, should make no objection, or should be estopped for any reason from opposing it.

8. Where a new corporation is entitled, by way of subrogation, to all the interest of the creditors of an insolvent corporation after it is dissolved by a decree, and also to all the interest of the stockholders in the property of the old company, the new company becomes the sole *cestui que trust*, and a sale of the property is not necessary, but the court having control of the trust property may direct the trustee, the old company, to convey the title to the new company.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. UPTON M. YOUNG, and Messrs. KOERNER & HORNER, for the plaintiffs in error.

Mr. M. SCHAEFFER, and Messrs. GREEN & GILBERT, for the defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The property involved in this controversy is a coal mine and its appurtenances, situated at Sandoval, in Marion county, Illinois. In *St. Louis and Sandoval Coal and Mining Co.* v. *Sandoval Coal and Mining Co.* 111 Ill. 32, we decided that the legal title to the property was in the St. Louis and Sandoval Coal and Mining Co., (called the old company,) and that the sale by the receiver in this cause to Isaac Main was void, and, by consequence, that the Sandoval Coal and Mining Co., (called the new company,) which held under a conveyance from Main, had no legal title to the property. The new company bought the property in good faith, supposing that its title was good. As a consideration for its purchase it paid off the debts of the old company, amounting to about $2400. It went into possession of the property upon getting its deed from Main, and has spent $28,145.74 in improvements upon the two acres upon which the coal shaft is located, and, besides this, has paid out $6835 for railroad chutes, tramways, scales, revolving screens, elevators, engine, elevator building and steam connections, making a total expenditure of $34,-980.74. The old company sank the shaft to a depth of one hundred and fourteen feet, and then abandoned the enterprise for want of means. The new company continued the sinking of the shaft, at a cost to themselves of $9000, until they reached coal at a depth of six hundred and fifty feet. To take the property away from the new company, after this immense outlay of money and labor, will be a great hardship, and ought not to be done, unless its equities as a *bona fide* purchaser are necessarily overborne by the inexorable rules of law.

The decision in *St. Louis and Sandoval Coal and Mining Co.* v. *Edwards*, 103 Ill. 472, reversed the decree rendered in this cause, on August 15, 1878, for want of proper service upon the old company. After such reversal, the old company came in and filed its answer, on August 15, 1882. Thereafter, on August 7, 1883, the court rendered a decree finding that the old company had "ceased doing business, leaving debts unpaid," and decreeing that it be dissolved, and continuing the cause for further report from the receiver, who had, by a previous order, been directed to take measures to collect money enough from the stockholders to pay the debts. A motion was made to set aside the decree of August 7, 1883, which was continued from term to term, and finally overruled at the February term, 1885. We think that this decree was warranted by the facts in the case. The evidence shows that the old company had ceased to do business, and had left debts unpaid, and was insolvent and unable to prosecute the work for which it was organized. Under the 25th section of the Corporation act, the court had power to dissolve it.

After the decision of the ejectment suit, already referred to, in 111 Ill. 32, the complainants in the original bill filed a supplemental bill, setting up the sale by the receiver, and that it had been declared void; that the new company had advanced money to pay off the debts of the old company, and had taken possession of the property and expended some $34,000 on it, and asking that the ejectment suit be enjoined, and that the equitable claims of the new company be adjusted. The latter filed its answer, and also a cross-bill, setting up all the previous proceedings in this cause, alleging that the sale to it and its improvement of the property had been approved and sanctioned by all the legal stockholders of the old company, and praying that such stockholders be required to deliver to it a deed, in the name of the old company, conveying the two acres it had purchased. The old company and five of the defendants to the original bill, claim-

ing to be stockholders, filed a demurrer to the cross-bill, which was overruled, but, without standing by the demurrer, they answered.

On August 25, 1885, a decree was finally entered in accordance with the prayer of the cross-bill, finding that the complainants in the original bill were the only legal stockholders of the old company, and that the defendants to the original bill were not stockholders, and entitled to no voice in the distribution of the assets; that the sale by the receiver to Main, a stockholder and director, had been made to enable him to raise money to pay the debts, and that the new company had paid the debts, and that its purchase and improvements had been made with the knowledge and approval of all the stockholders, and decreeing that the legal stockholders execute to it a deed of the property in the name of the old company. The record presents the question of the propriety and correctness of this decree.

The old company was before the court for the purpose of having its business closed up, under the 25th section of the Corporation act. Its corporate existence was extended by the statute in order that there might be, under the direction of the court, a just and equitable distribution of its assets. Substantially the only asset which it possessed was the two acres of ground in question. It held the legal title to these two acres in trust for the creditors and stockholders. "In equity the corporation is regarded as a trustee, holding the corporate property for the benefit of its creditors and shareholders, which, upon its dissolution or civil death, a court of chancery will lay hold of as a trust fund and distribute for their benefit." (*Life Association of America* v. *Fassett*, 102 Ill. 315.) The creditors have a lien or priority of payment in preference to the stockholders. (*Hastings* v. *Drew*, 50 How. Pr. 254.) The stockholders are the owners of the franchise, property and assets of the company which remain after its debts and liabilities are discharged. (*Chetlain* v. *Republic Life Ins. Co.*

86 Ill. 220.)    The old company whose dissolution had been already decreed, stood before the court in the attitude of a mere trustee, holding the naked legal title to a piece of land which the court had the power to dispose of and distribute among the creditors, in the first place, and in the event of a surplus, among the stockholders in the second place.    The creditors, as a prior class, and the stockholders, as a subordinate class, were the sole and only *cestuis que trust*, and they, together with their trustee, were all before the court.

The new company advanced for the purchase of the property an amount of money which was sufficient to pay all the creditors of the old company in full, and which was in fact actually used to pay such creditors; therefore the new company was entitled to be subrogated to the rights of the creditors, notwithstanding the fact that the deed from the receiver, through which it held, was declared void.    In *Kinney et al.* v. *Knoebel et al.* 51 Ill. 112, where a sheriff's sale was held to be void, and the title of Morrison, the purchaser at said sale, was held to be invalid, the court say : "Notwithstanding the sale was unauthorized, Morrison has advanced money which has paid and discharged liens of creditors to a large amount on the property ; and inasmuch as he acted fairly and without fraud in his purchase, it is manifestly equitable that he should be subrogated to the rights of the creditors whose debts he has paid."    As a result of its subrogation to the rights of the creditors so paid off with its money, the new company stepped into the place of the creditors ; and, therefore, the old company held the legal title to the property as trustee, for the benefit of the new company, as *cestui que trust*, to the extent to which the purchase money of the latter had discharged the debts.

The evidence is clear that the property was not worth any more than the new company paid for it at the time the payment was made.    By the original contract with Seymour, which required the shaft to be sunk six hundred and fifty

feet, at $18 per foot, $11,700 was the estimated expense of reaching coal. Until coal was reached, the two acres were worth almost nothing. Seymour quit work after he had sunk the shaft one hundred and fourteen feet, because he was not paid for what work he had already done. The abandoned shaft became filled with water, and was in that condition when the new company made its purchase.

Inasmuch as the new company had advanced the money and paid the creditors and become subrogated to their rights, the court, having the trust estate under its control, and being authorized, under the law, to apply it in discharge of the debts, had the power to direct the old company to convey the trust property to the new company, one of the *cestuis que trust*, for whose benefit the title was held, provided that the stockholders, constituting the second class of the *cestuis que trust*, and to whom, alone, the remainder of the property, if any, would rightfully belong after the payment of the debts, should make no objections to such conveyance, or should be estopped, for any reason, from opposing it.

It will not be denied that after the old company came in and answered, the court could have compelled it to transfer its legal title to the receiver, and could then have directed the receiver to make a re-sale of the property, and out of the proceeds of such re-sale to pay the creditors, or the new company that had been subrogated to their rights, and then to distribute the balance of such proceeds, if any, among the stockholders. But if the new company was equitably entitled to all the interest of the creditors in the property, and also to all the interest of the stockholders in the property, it was itself the sole *cestui que trust*, and therefore no re-sale was necessary. The court could direct the trustee, the old company, to convey the title to the equitable owner—the new company.

The question then arises whether the relation of the stockholders towards the new company is such as to estop them from opposing its claim to the property. The decree finds that certain persons, whose names it is not necessary here to mention, are not equitable or valid stockholders, and have no interest in the assets of the old company. After a careful examination of the record we think that this finding is sustained by the evidence. Some of these persons never paid anything for their stock in the first place. The stock of all of them has been duly and legally forfeited for nonpayment of assessments. When the sinking of the shaft was stopped for want of funds, they were assessed a certain percentage on the amount of their stock to raise money to carry on the enterprise, but refused to pay, and suffered a forfeiture of their stock, under the rules and by-laws of the company. In *Terwilliger* v. *Great Western Telegraph Co. et al.* 59 Ill. 249, it was held that the only real stockholders in the telegraph company, referred to in that case, were the persons who had paid their money as subscribers. The position of certain of the parties in that case who claimed to be stockholders, but were held not to be such, is very much like the position of certain persons claiming to be stockholders in the case at bar. One of the plaintiffs in error herein was a nominal subscriber for two hundred and eighty-six shares of stock, amounting to $28,600, but never paid a cent on his subscription. The company acknowledged an indebtedness to him of $10,000, which, in fact, did not exist, and in discharge of such fictitious indebtedness, issued for him $10,000 of paid up stock,—$5000 to his wife, $4000 to one of his friends, and $1000 to another of his friends, none of whom, however, paid anything.

The decree further finds that the complainants in the original bill in the court below are the only valid stockholders in the old company, and the evidence sustains the finding. Such complainants are the only parties who are interested in the

12—116 ILL.

distribution of the assets of the old company, after the payment of its debts.   All of them, except Henry Wellhorner, filed an answer to the new company's cross-bill, and in their answer consented to the prayer of the cross-bill and to the conveyance of the property to the new company.   As to Wellhorner, he was one of the complainants in the original bill and in the supplemental bill.   He was instrumental in getting the receiver appointed and in having the sale made through Main to the new company.   Wellhorner was one of the stockholders of the old company who induced Martin, the president of the new company, to go into it, by representing that the old company was insolvent and had been dissolved, and had been settled up by the court.   He solicited Martin to proceed with the sinking of the shaft within the time limited by the deeds.   Owing to these representations and solicitations, Martin took stock in the new company.   Wellhorner himself took part in the organization of the new company, and took stock in it, knowing that the purpose of its organization was to improve and develop the mine which the old company had abandoned.   He was present on the ground, and encouraged the new company in the work of improving the two acres purchased by it, and in the work of sinking a shaft thereon, at great cost.   Under these circumstances, he is estopped from asserting any interest, as a stockholder of the old company, in these premises, as against the new company.   *Wade* v. *Bunn,* 84 Ill. 117 ; *Eldridge* v. *Walker,* 80 id. 270 ; *Noble* v. *Chrisman,* 88 id. 186 ; *Anderson* v. *Armstead,* 69 id. 452 ; *Lloyd* v. *Lee,* 45 id. 277 ; *Weaver* v. *Poyer,* 79 id. 417 ; Herman's Law of Estoppel, sec. 336 ; 1 Story's Eq. Jur. (12th ed.) secs. 385, 389.   Hence the new company may be regarded as equitably entitled to all the interest which the legal stockholders can claim in the two acres in question, being the sole remaining asset of the old company.

The decree of the court below is affirmed.

*Decree affirmed.*