## Edward C. Richards et al. v. Eurotus Morton.

*Old Court of Chancery: Foreclosure proceedings: Jurisdiction.* By the law of 1847, the office of Chancellor of the old Chancery Court, was abolished; but the "Court of Chancery" was retained. By the revised statutes of 1847, all new chancery business was conferred upon the "Circuit Courts in Chancery." The Supreme Court was empowered to wind up the business pending in the

RICHARDS ET AL. *v.* MORTON.

old Court of Chancery, and the Circuit Courts had exclusive jurisdiction in all other chancery cases. The former court continued such jurisdiction until January 1, 1852.

In a foreclosure suit commenced in 1846, in the old Court of Chancery, in Wayne County, where the mortgaged premises were:

*Held*, that the tribunal provided for by the act of 1847, retained complete and exclusive jurisdiction over the case until after January 1, 1852.

The records in said court showed that the notice of sale, made in 1850, was made by virtue of a decree of " the Circuit Court in Chancery for the county of Washtenaw," that the recitals in the master's deed were in the same form; that the report of sale was entitled in the same way, and addressed to said court, and that all the proceedings of the master purported to relate to a case pending in that court, and not in the " Court of Chancery."

*Held further*, that the written evidence of said proceedings denote that they pertained to the said Circuit Court, and not to the old Court of Chancery.

*Foreclosure: Confirmation of report: Evidence of title of purchaser at foreclosure sale.* It appeared that an ex-parte order was made by said Circuit Court in 1853, when it had complete jurisdiction, allowing a writ of assistance, and reciting that it appeared by affidavit on file, that Rawson, who was in possession of the mortgaged premises, " had been served with a certified copy of the order confirming the master's report of the sale."

*Held*, that said order did not operate as a confirmation of the proceedings, and therefore the equity of redemption was not barred.

*Held further*, that defendant, Morton, who claimed the premises as vendee of Edmonds, who was the purchaser of them at the alleged foreclosure-sale succeeded to all the rights of said Edmonds, as owner, by virtue of said purchase, of the mortgage sought to be foreclosed; that said complainants were entitled to redeem said mortgage, and to have an account as to the amount due thereon.

*Heard April 22, Decided April 27.*

Appeal in chancery from Wayne Circuit.

The bill in this case is filed to foreclose two mortgages: given repectively by Amariah Rawson and William E. Warner, to George W. Gilbert.

To the foreclosure of the latter mortgage, defendant Morton offered no defence; but he claimed a right to the property covered by the Rawson mortgage superior to that of the complainants.

The mortgage under which the defendant claimed was given to Simeon A. Dunn, and was dated July 1, 1841, and was recorded July 2, 1841.

The mortgage under which the complainants claim was dated October 29, 1847. Dunn assigned his mortgage to Newton Edmunds, who, on the 14th of February, 1846, filed a bill in the old *Court of Chancery, 2d Circuit,* to foreclose it. Subpœna was issued and served, answer and

replication filed more than a year prior to the execution of the mortgage by Rawson to Gilbert, under which the complainant claims.

The cause was commenced and carried to a decree in the old *Court of Chancery for the 2d Circuit*. By the law of 1847, abolishing the office of *Chancellor*, the old court was retained and the jurisdiction devolved upon the justices of the Supreme Court for the purpose of disposing of the business commenced in said court as theretofore constituted.

The class of cases to which this belongs remained under the jurisdiction of said Supreme Court Judge until January 1, 1852: the land being in another county, Wayne, than that where the old court was held (Washtenaw county.)

The new courts of chancery, as created by said law were designated, "*The Circuit Court for the county of ____ in Chancery.*"

The defendant contended that the property was regularly sold under the decree to Edmunds, who afterwards conveyed it to him.

On the hearing, it appeared that the proceedings in the suit which were very imperfect, showed, amongst other things, the following:

The notice of sale, was as follows: "Notice is hereby given, that, by virtue of a decretal order made by the Circuit Court for the county of Washtenaw, State of Michigan in chancery, bearing date the 27th day of December, A. D. 1849, in a certain case pending in said court."

The master's deed, recited that, "Whereas, at a session of the Circuit Court for the county of Washtenaw, State of Michigan in chancery, held on the 27th day of December, A. D. 1849, it was among other things, ordered adjudged and decreed by said court, in a certain case then depending in said court." "And whereas I, the said Levi Bishop, master in chancery, * * * in pursuance

of said order and decree of said court, did" sell, "having first given six weeks previous notice of the time and place of such sale," "agreeably to said order," "Now therefore, * * "in order to carry into effect the said sale so made.'

The master's report on sale, was as follows: "State of Michigan, Circuit Court for the county of Washtenaw, in chancery.

*Newton Edmunds,* complainant vs. *Amariah Rawson,* defendant.

To said court: "In pursuance of a decretal order of said court, made in said cause," "I, the subscriber," * * "by virtue of and pursuant to said order and decree, do hereby report."

From the journal entry of the Circuit Court for the county of Washtenaw in chancery, it appears that the following order was made by judge *Johnson,* on the 29th of September, 1853.

"*Newton Edmunds v. Amariah Rawson.*

Upon reading and filing the affidavit of Amos C. Blodget, whereby it appears that the defendant Amariah Rawson, who is in possession of the lands and premises mentioned and described in the bill of complaint and deed in this cause, was served with a certified copy of the order confirming the master's report upon a sale of the premises in this cause, and that at the same time the master's deed for said premises was produced and shown to him, and that he was then required to deliver possession of the said premises which he refused to do. Upon motion of C. Joslin, solicitor for complainant, it is ordered that a writ of assistance be awarded against the said Amariah Rawson to the Sheriff of the county of Wayne, thereby commanding him to put the said purchaser in possession of the said premises described in the said deed, and him in the possession thereof from time to time maintain and defend."

On the hearing, the bill was dismissed without prejudice.

RICHARDS ET AL. v. MORTON.

*E. W. Morgan*, and *G. V. N. Lothrop*, for complainant and appellant.

*H. K. Clarke*, for defendant and appellee.

GRAVES J.

The original bill in this case was filed on the sixth day of January, 1855, to foreclose two mortgages executed on the 29th of October, 1847, one by Amariah Rawson, and the other by William E. Warner, to George W. Gilbert, and such bill was followed by a supplemental one, filed by the complainants on the 14th of September, 1863.

Morton answered, but all the other defendants suffered the bills to be taken as confessed, and, on the hearing, they were dismissed as to him, and the complainants appealed to this court.

The defense interposed by Morton relates exclusively to the Rawson mortgage, and the property covered by it, which property he claims to have acquired by purchase of Newton Edmunds, whom he alleges to have been the vendee of the same on foreclosure and sale, upon a mortgage given on the same premises by Rawson to one Simeon A. Dunn several years before the execution of the mortgage to Gilbert, namely July the first, 1841.

It is maintained, on the part of Morton, that the foreclosure proceedings on the Dunn mortgage were commenced on the 14th of February, 1846, in the Court of Chancery, as then constituted, that a decree of sale was made in 1849, and that the property was sold to Edmunds, pursuant thereto, on the 15th of May, 1850.

It is seen, therefore, that the position of Morton amounts to an assertion of an adverse and paramount title, derived through the foreclosure proceedings on the prior mortgage given to Dunn.

The material question in the case is whether, by the proceedings so carried on by Newton Edmunds, he obtained the legal title and barred the equity of redemption as against those, setting up the mortgage in suit.

The decision of this question requires us to determine whether certain proceedings essential to the completion of the foreclosure, and the validity of a title depending thereupon have been shown to have taken place. Upon this point the parties are at issue, it being maintained by the complainants that several of the most essential things for the foreclosure relied on, are in no manner shown to have been done, while it is urged in behalf of Morton that it sufficiently appears that all requisite proceedings were had, and that certain discrepancies pointed out by the complainants as to the description of the tribunal in different instances in the papers and proceedings produced in evidence, are merely verbal, and such as ought not to prejudice Morton's right.

By the act which took effect February, 27, 1847 ( *Sess. L. 1847, p. 33,* ) the office of Chancellor was abolished, but the Court was retained, and the jurisdiction devolved upon the Justices of the Supreme Court, for the purpose of disposing of all the business commenced in the Court as theretofore constituted. This act also continued the registers of the Court in office, and authorized the Justices of the Supreme Court to fill vacancies by appointment. By the R. S. which took effect on the first of March, 1847, jurisdiction as to all new business was given to the Circuit Courts in Chancery for the several counties.

It is seen that this law of February 27th, provided a particular tribunal for the winding up of the business pending in the old court, at the time when the Circuit Courts in Chancery for the several counties were clothed with exclusive jurisdiction in all other cases, and, on examination, it will be found that such particular tribunal continued to have exclusive jurisdiction of the matters so confided to it, until June 2, 1850, at which time by the act of that year ( *L. 1850, p. 416, 417,* ) certain cases were made transferable in the way, and upon the grounds specified in the act, to the Circuit Court in Chancery for the county.

It is, however, conceded that this act did not apply to the case. As the bill to foreclose the Dunn mortgage was filed in 1846, in the old court, and the mortgaged premises were in Wayne county, the tribunal provided for by the act of February, 1847, must have retained complete and exclusive jurisdiction over the case until after January 1, 1852, when the act of June, 1851, became operative, ( *Sess. L. 1851, pp. 276, 277.* )

The Courts of Chancery in this State have always been required to keep an accurate record of their decrees, orders, and proceedings, in such form as to identify the tribunal exercising jurisdiction in the given case, together with the acts performed; and the necessity for so doing is founded upon reasons so obvious and conclusive as to supercede any critical reference thereto. From the nature of the case, a particular court can, in general, be precisely distinguished upon the face of its proceedings in no other way than by the style which belongs to it, or, in other words, the appellation which the law has bestowed upon it, for the very purpose of distinguishing it from all other judicial organizations. It is undoubtedly true that in many instances a mere clerical misnomer will be amended, or rendered harmless by construction, but when this is done, it must be because the evidence of mistake comes in such shape, and under such circumstances as to leave no question as to the intrinsic rectitude of the act, the fact of mistake, and the authority to read the record or proceeding according to the truth. When, however, the written entries or files in the nature of a record, or constituting a record, furnish the only written evidence of the character of the proceeding, or of the identity of the tribunal, they must, when compatible with the general jurisdiction and course of such court, be necessarily conclusive in a collateral inquiry as to those points, in conformity with the principle which accords verity to the record, and will not permit one to be contradicted by parol.

We have seen that, from a short time after the filing of

the bill in the old court to foreclose the Dunn mortgage, there existed and were held in Washtenaw county, until 1852, two entirely distinct and independent tribunals for the transaction of Chancery business, one having exclusive jurisdiction over that case, and the other having no concern with it whatever. It is also well known that the style or title of the court so having jurisdiction of that cause was "The Court of Chancery of the State of Michigan, for the Second Circuit," and that the style or title of the other court, which had no jurisdiction in that case, was "The Circuit Court for the County of Washtenaw in Chancery."

The first material objection to the validity of the proceedings for the foreclosure of the Dunn mortgage relates to the decree, the complainants denying that any decree of foreclosure and sale was made by the court having cognizance of the case and jurisdiction. And, although there is some ground for contending that no decree was actually made and enrolled in such court, it is not necessary to discuss that point, because we feel compelled to hold that difficulties subsequent to the supposed decree must inevitably defeat the claim of the defendant, Morton. On turning to the proofs in the case, we observe that the master's notice of the sale under which Morton makes his claim, stated that the sale would be made by virtue of a decree of "the Circuit Court for the County of Washtenaw, in Chancery," in a case pending in said court; that the recitals in the master's deed were in the same form, that the report of sale by the master was entitled in that way, and addressed to the same court, and that all the proceedings of the master purported to relate to a cause pending "in the Circuit Court, for the County of Washtenaw in Chancery," and not in "the Court of Chancery, of the State of Michigan, for the Second Circuit." The written evidence of all these proceedings denotes that the proceedings it describes pertained to the Circuit Court for the County of Washtenaw, in Chancery, and not to the other court, and they could

not, in the present instance, be referred to the Court of Chancery of the State, for the Second Circuit, without disregarding the object of written records, and the purpose of specific appellations for the tribunals of the country. Indeed it seems reasonable that, in ascertaining which court was acting or addressed, we should be guided by the evidence furnished by the records, and should not reject the testimony they afford on the subject, upon the assumption that the proceedings of one court were carried on in the style of another.

But it is maintained, on behalf of Morton, that the public sale before mentioned was duly confirmed by the Circuit Court for the County of Washtenaw, in Chancery, on the 24th of September, 1853, when that court had complete jurisdiction by force of the act of 1851 (*L. 1851, p. 276,*) and that such confirmation was and is conclusive as to the rights of all parties to the suit, and all others claiming under them to the subject in controversy.

On recurring to the record, it will be observed that the action of the court, which is claimed to have been in confirmation of the sale, seems to have been an ex-parte order allowing a writ of assistance, and reciting that it appeared from the affidavit of Amos C. Blodget, that Rawson, who was in possession, had been served with a certified copy of the order confirming the master's report upon a sale of the premises, &c.

There are several reasons against giving to this order the effect imputed to it. First: There is nothing to show that Rawson appeared, or had notice of the application, while the circumstances tend to prove the contrary. Second: It is evident that it was not meant to pass upon the validity of the sale in allowing this order. Third: The recital or statement that an order of confirmation had been served, purports to have rested on affidavit, and on the opinion of the affiant as to what constituted a legal order of confirmation and a proper service, and the recital

would therefore furnish no higher evidence that a confirmation was duly had, than would a similar affidavit at the present time; and Fourth: That as an order of confirmation was a pre-requisite to the order allowing the writ of assistance, a bare recital of the existence and service of the former could not establish the validity of the latter, or supercede the necessity of independent proof of the precedent order.

If the entry under date of September 19, 1853, is relied on as the order of confirmation mentioned by the deponent Blodget, in his affidavit, then, as that entry was made during vacation, without the actual cognizance of the court, but at the sole instance of the party, and at his peril, it could not have the effect of a real adjudication upon the validity of the antecedent proceedings, so as to make good all of such proceedings, and cure all the omissions, errors, and imperfections which had before occurred.   We have no evidence that this entry was in the contemplation of the court, when the order allowing the writ of assistance was made, and to give to an entry, like this, made by the party in vacation, the extensive effect claimed for it, would, it is believed, be unsupported by precedent, and attended by very dangerous consequences.

These considerations require us to hold that the claim of Morton that the equity of redemption in the Dunn mortgage was barred, and that Edmonds, his grantor, acquired a complete legal title, by means of the foreclosure suit commenced in the old court, is not supported by the evidence.

There is still no question, however, but that by means of the circumstances stated in the pleadings, Newton Edmunds became invested with the ownership of the Dunn mortgage, and that by the conveyances to Morton, the latter succeeded to all the rights of Edmunds.  But we are of opinion that the deed from Bishop to Edmunds, and the deeds to Morton from Lockwood and Edmunds,

were wholly ineffectual as conveyances of the land, and were only operative in working an equitable transfer of the mortgages,

According to this view, the complainants, as subsequent mortgagees, are entitled to redeem the Dunn mortgage, and to demand its discharge. The complainants are also entitled to have an account taken, in the usual way, of the amount due and unpaid on that mortgage, and of the rents and profits of the mortgaged premises, chargeable in the usual course against Edmunds and Morton respectively, and to have any balance found against the latter persons on such accounting, applied on the mortgage, so far as necessary to satisfy it.

We are also of opinion that upon such accounting the defendant, Morton, should be credited as of December 29, 1849, with the sum of $53 for the costs taxed for proceedings up to the decree in the suit commenced in the old court, and that there should be applied on the mortgage as of the 26th of December, 1849, the sum of $100 paid by Rawson, in the said suit, to the solicitor for Edmunds. And we are further of opinion that if the accounting should establish a balance of rents and profits sufficient to satisfy the mortgage, or if the complainants should pay any amount remaining, and sufficient to satisfy it, that then the defendant, Morton, should be required to discharge the mortgage within some proper time, at the expense of the complainants; and, on the other hand, if upon the confirmation of the report, a balance should still remain unpaid upon the mortgage, and the complainants should fail to pay the same within some reasonable time to be fixed for that purpose, that then the bill should be dismissed as against the defendant, Morton, with costs.

The decree of the court below dismissing the bill as against the defendant, Morton, must be reversed, with costs, and the case must be remanded to such court, to

18 MICH.— S.

be proceeded in, conformably to the principles which have been stated.

The other Justices concurred.