CHARLES W. BRANDON *et al.*

*v.*

JOSIAH M. BROWN, EXR.

*Filed at Ottawa May 10, 1883.*

1. ADMINISTRATION—*executor not liable to account to legatees for proceeds of sale of land where they avoid the sale.* An executor, under decree of the county court, sold real estate of his testator, giving a deed warranting the regularity and validity of the proceedings to sell, and received the purchase money, with which he charged himself in his reports. Before the distribution of the money the legatees, repudiating the sale, brought ejectment, and recovered the land for want of jurisdiction in the county court to make the decree of sale, whereupon the executor refunded the price of the land to the purchaser, and refused to charge himself further with the same in his reports, and the legatees sought to charge him with this money, claiming he was estopped to deny it belonged to the estate by his former reports: *Held,* the court properly refused to make him account for the money, and that there was no estoppel in the case.

2. *COUNTY COURT—has equitable jurisdiction.* The county court to the extent it has jurisdiction (and this extends to the settlement of estates of deceased persons) exercises equitable jurisdiction.

3. *MISTAKE—may be corrected in equity.* In equity, if a person by accident or mistake, in making up his accounts with another, has charged himself with too much or too little, the real facts will govern, and the mistake will be corrected as the facts warrant, and he will be charged only with what he justly owes. And this rule obtains in the accounts of administrators, executors and guardians made to the county court, and their reports will not be held conclusive on them.

4. *SAME—former decision.* In the matter of *Steele, Guardian,* 65 Ill. 326, the guardian was held, upon the facts in that case, not to be concluded by his report as to moneys with which he was therein charged,—but the court added: "If a report was fair upon the face, without any apparent mistake, we do not wish to be understood as holding that parol evidence would then be admitted to contradict or explain it." It was considered this limitation was well enough on the facts before the court, but it is not to be taken as an implication that the court would, had the facts called for a decision, have decided that parol evidence was not admissible to show error, by reason of accident or mistake, in a report fair on its face. Directly the reverse is the law.

5. *JUDICIAL SALES—doctrine of caveat emptor is applied to protect those making sales.* The doctrine of *caveat emptor* is applied to judicial sales for the protection of those conducting them, and not for the benefit of heirs and legatees repudiating them.

6. *SAME—minor repudiating, required to refund what he has received from the sale.* This court has repeatedly decided that when a minor disaffirms a judicial sale by bill in equity, he must return, or offer to return, what he has received, if it be in his power. Repudiating by action of ejectment is in effect the same as by bill in equity, and no court exercising equitable powers will allow a party to do this and also receive the proceeds of such sale not yet paid over to him.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. HILL & DIBELL, for the appellants:

The rule of *caveat emptor* applies to executors' and administrators' sales of real estate to pay debts, and in case the sale is void, the purchaser, except in cases of fraud or warranty, is absolutely without remedy, in law or equity, to

recover the purchase money paid.    *Owings* v. *Thompson,* 3 Scam. 509; *Bingham* v. *Maxcy,* 15 Ill. 295; *McManus* v. *Keith,* 49 id. 389; *Bassett* v. *Lockard,* 60 id. 164; *Bishop* v. *O'Connor,* 69 id. 431; *Holmes* v. *Shaver,* 78 id. 578; *Bond* v. *Ramsey,* 89 id. 29.

But if the heirs or devisees of the land sold resort to a court of equity for relief against the purchaser at such void sale, relief will be given only upon condition of refunding the purchase money and taxes, and this upon the principle that he who seeks equity must do equity.    *Chambers* v. *Jones,* 72 Ill. 273; *Kinney* v. *Knoebel,* 51 id. 112; *Reynolds* v. *McCurry,* 100 id. 356.

Covenants of warranty of title, or against his own acts or omissions, in executor's or administrator's deeds, do not bind the estate, but do bind the executor or administrator personally.    *Sumner* v. *Williams,* 8 Mass. 162; *Mitchell* v. *Haven,* 4 Conn. 295; *Belden* v. *Seymour,* 8 id. 24; *Mason* v. *Ham,* 36 Me. 573; *Vincent* v. *Morrison,* Breese, 227; *Mason* v. *Caldwell,* 5 Gilm. 195; *Bishop* v. *O'Connor,* 69 Ill. 434; *Young* v. *Loram,* 11 id. 641.

Minors and married women are not estopped by receipt of the purchase money from afterward recovering the real estate for which the money was paid.    Nothing short of actual fraud will so estop them.    Bigelow on Estoppel, 443–447; *Davidson* v. *Young,* 38 Ill. 147; *Schnell* v. *City of Chicago,* id. 384; *Rogers* v. *Higgins,* 48 id. 217; *Dorlarque* v. *Cress,* 71 id. 381; *Oglesby* v. *Coal Co.* 79 id. 164.

An executor or administrator of property, into possession of which he has been let under the will or letters of administration, is, like a tenant, estopped from denying that it is the property of the estate.    Bigelow on Estoppel, (2d ed.) 389; *Willenborg* v. *Murphy,* 36 Ill. 344; *Phillips* v. *Rogers,* 12 Metc. 405.

The reports of guardians, supervisors, treasurers, and others acting in a like fiduciary capacity, are binding and conclu-

sive, not only upon them, but also upon their sureties, even
in cases where the money was not in fact received as stated
in the report. *Fogarty* v. *Ream,* 100 Ill. 375; *City of Chi-
cago* v. *Gage,* 95 id. 629; *Roper* v. *Sangamon Lodge,* 91 id.
518.

Money or property received by the executor in his capacity
as executor will be treated and distributed as assets of the
estate, although such money or property did not belong to
the testator, and never was in his possession or control.
3 Williams on Executors, (Perkins,) 1755; *Loring* v. *Cun-
ningham,* 9 Cush. 87; *Goltra* v. *People,* 53 Ill. 224; *People* v.
*Phelps,* 78 id. 148; *Willenborg* v. *Murphy,* 36 id. 344.

Mr. G. D. A. PARKS, for the appellee:

The probate court possesses original, plenary, and, except
in certain cases, exclusive jurisdiction in the settlement of
the accounts of executors and administrators.   Const. art. 6,
sec. 18; *Propst* v. *Meadows,* 13 Ill. 169; *Freeland, Exr.* v.
*Dazey et al.* 25 id. 296; *Heward* v. *Slagle,* 52 id. 340; *Heus-
tis* v. *Johnson,* 84 id. 61; *Moline Water Power Co.* v. *Webster,*
26 id. 239; *Hales et al.* v. *Holland,* 92 id. 498; *Tryon* v.
*Farnsworth,* 30 Wis. 581; *In re Steele et al.* 65 Ill. 324; *Wil-
son* v. *Kirby,* 88 id. 573; *Upton* v. *Badeau,* 3 Bradf. 13; *Poole*
v. *Munday,* 103 Mass. 174; *Pitkin* v. *Pitkin,* 7 Conn. 315.

Because the judgment of the probate court, in such a case,
is not a general judgment *quod recuperet,* is no reason for say-
ing it is not a "judicial determination" fixing the general
liability of the executor to the estate. *Wells* v. *Hogan,* Breese,
338; *Hough* v. *People,* 66 Ill. 178; *Ralston* v. *Wood,* 15 id.
169; *Mitchell* v. *Mayo,* 16 id. 84; *Fogarty* v. *Ream,* 100 id.
374.

He who seeks equity must do equity.   Under this rule
no vendor of real estate by a void or voidable sale, whether
executed by himself in person or through the agency of a
trustee or other representative, can disaffirm the sale, and

afterwards have the aid of a court to recover also the purchase money of the same land.  *Penn* v. *Heisey*, 19 Ill. 298; *Chambers* v. *Jones*, 72 id. 275; *Paddleford* v. *Pierce*, 72 id. 500; *Walker* v. *Mulvean*, 76 id. 18; *Wickiser* v. *Cook*, 85 id. 68; *Reynolds* v. *McCurry*, 100 id. 361; *Blodgett* v. *Hitt*, 29 Wis. 190; *Mohr* v. *Tulip*, 44 id. 280; *Findley* v. *Richardson*, 46 Iowa, 103; *Dowell* v. *Good*, 25 Ohio St. 390; *Dedford* v. *Mercer*, 20 Iowa, 124; *State* v. *Stanley*, 14 Ind. 409; Rorer on Judicial Sales, sec. 460; Bigelow on Estoppel, 578; 2 Smith's Leading Cases, 736, 742; 2 Story's Eq. Jur. secs. 1262, 1263; *Smith* v. *Warden*, 7 Harris, (Pa.) 430.

It is but begging the question to affirm that the purchase money, on being received by the executor, became, *ipso facto,* assets of the estate.  That depended upon the future action of appellants in affirming or disaffirming the sale.  *Johnson* v. *Corbett*, 11 Paige, 265; *King* v. *Whitton*, 15 Wis. 658; *In re Steele*, 65 Ill. 227.

An estoppel *in pais* can only be set up as a means to prevent injustice,—not as a reward.  *Thomas* v. *Bowman*, 29 Ill. 429.

Upon the general subject of how far the doctrine of *caveat emptor* is qualified by equitable rules, even as between the heirs and the purchasers in void judicial sales, I refer to *Worthington* v. *McRoberts*, 9 Ala. 297; *Mitchell* v. *McMullen*, 59 Mo. 252; *Connor* v. *Eddy*, 25 id. 75; *Campbell* v. *Brown*, 6 How. (Miss.) 230; *Langham* v. *Thompson*, 6 S. & M. 259; *Shields* v. *Allen*, 77 N. C. 375; *Claiborne* v. *Yeoman*, 15 Texas, 44; *Burdett* v. *Silsbee*, id. 604; *Longworth* v. *Wolfington*, 6 Ohio, 9; *Sharkey* v. *Bankston*, 30 La. Ann. 891.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Sale of certain real estate was attempted to be made by an executor for the purpose of paying debts of the testator, pursuant to a decree of a county court.  The executor made a deed to the party purchasing, and therein covenanted as to

the regularity, etc., of his own acts. The purchase money
was all paid to the executor, and for several terms, in his
report to the county court, he charged himself with the
amount. Subsequently, and before he had paid the money
to the devisees,—it not having been used for the payment of
debts,—the legatees brought ejectment for the real estate so
sold, and recovered it from the purchaser, on the ground that
the county court rendering the decree did not have jurisdic-
tion over their persons. After this recovery the executor
refunded the amount of the purchase money to the purchaser
of the real estate, and refused farther to charge himself
therewith in his reports to the county court. The question
now to be determined is, simply, whether these devisees, hav-
ing repudiated the sale by their action of ejectment, are,
nevertheless, entitled to hold the executor responsible for the
amount thereof.

It is plain there is no justice in such a claim, for the de-
visees have already got all that ever belonged to them, and
nothing, therefore, but an arbitrary and inflexible rule of law
could ever be appealed to for its sanction. Counsel for ap-
pellants insist there is here such a rule—that the executor is
estopped, by his reports admitting the amount in his hands,
to show that it was improperly there. There is clearly no
estoppel to be invoked. Nothing is shown to have been done
by the devisees, on the faith of those reports, which would not
otherwise have been done, and the position of no one has
been changed or affected thereby. The cases cited by coun-
sel, where parties have been held bound by reports made by
them as admissions of fact, are not at all analogous. The
county court, to the extent it has jurisdiction, (and this un-
questionably extends to the settlement of estates of deceased
persons,) exercises equitable as well as legal powers. (*Dixon*
v. *Buell*, 21 Ill. 203.) And in equity, if a party, by accident
or mistake, has charged himself with too much or too little,
the real facts will govern, the mistake will be corrected as

the facts warrant, and he will be charged only with what he justly owes.

In *In re William Steele, Guardian,* 65 Ill. 326, the guardian, in his report, had charged himself with too much. It was said: "In the allowance of claims against estates the county court has equitable jurisdiction, and may adopt the forms of proceedings in equity. (*Dixon v. Buell,* 21 Ill. 203.) It may, likewise, possess a similar jurisdiction, and adopt the same mode of procedure in the adjustment of the accounts of guardians." And, after some discussion of the facts, it was added: "As there is a probable, if not an evident, mistake in the report, it should not be held conclusive upon the guardian. Upon the principles of equity, they should have been permitted to correct it by satisfactory proof." It is true the court, in subsequent language, limit the decision of the facts before it, saying: "If a report was fair upon the face, without any apparent mistake, we do not wish to be understood as holding that parol evidence would then be admitted to contradict or explain it." This limitation was well enough, inasmuch as it was not required that the court should go beyond the facts actually before it, but it is not to be taken as an implication that the court would, had the facts called for a decision, have decided that parol evidence was not admissible to show error, by reason of accident or mistake, in a report fair upon its face. Directly the reverse is the law.

It is said in 1 Story's Equity Jurisprudence, (sec. 91,) in specifying cases wherein executors and administrators are entitled to relief in equity: "Thus, if he," (*i. e.,* the executor or administrator,) "should receive money supposed to be due from a debtor to the estate, and it should turn out that the debt had been previously paid, and before the discovery he had paid away the money to creditors of the estate, in such a case the supposed debtor may recover back the money, in equity, from the executor, and the latter may, in the same manner, recover it back from the creditors to whom he paid

it. In like manner, if an executor should recover a judgment, and receive the amount, and apply it in discharge of debts, and then the judgment should be reversed, he is compellable to refund the money, and may recover it back from the creditors." See, also, Bispham's Principles of Equity, p. 189, sec. 183.

In *Sellew's Appeal*, 36 Conn. 186, it was held, where a mistake has been made in the settlement of the account, and property with which the executor is charged proves, in fact, to have been lost or destroyed when supposed to have been in existence, or is subsequently taken from the executor by a paramount title when it was supposed to belong to the estate, the equity power of the court of probate is sufficient for the correction of the mistake.

But counsel again insist the executor properly charged himself with this amount,—that the doctrine of *caveat emptor* applied to the sale, and that therefore the purchase money became and remained a permanent part of the funds of the estate. The doctrine of *caveat emptor* is applied to judicial sales for the protection of those conducting them, and not for the benefit of heirs and legatees repudiating them. Had the money here been paid to the legatees, and they, while yet minors, wasted and squandered it, they could not have been compelled to return it in order to set aside the sale. But here the money has never been paid out by the executor. The devisee has repudiated and disaffirmed the sale, and been placed in the possession of his property, and is asking that the executor also pay to him what the purchaser paid on the sale. As to this money he assumes the affirmative, and must, therefore, make out a case legally and equitably entitling him to have it. Suppose these devisees had filed their bill in equity, asking both that the sale be set aside and that they be paid what the purchaser had paid on the sale. Of course no one would pretend they could recover. We have repeatedly decided that when a minor disaffirms a

judicial sale by bill in equity, he must return, or offer to return, what he has received, if it be in his power. Where he has, during minority, wasted or squandered it, this is not required, but if the money is where it can be controlled by the court, it can not be retained by the party repudiating and disaffirming the sale. *Penn* v. *Heisey*, 19 Ill. 298; *Chambers et al.* v. *Jones*, 72 id. 275; *Padfield* v. *Pierce*, id. 500; *Walker* v. *Mulvean*, 76 id. 18; *Wickiser* v. *Cook*, 85 id. 68; *Reynolds* v. *McCurry*, 100 id. 361; *Kinney* v. *Knœbel*, 51 id. 126; *Smith* v. *Knœbel*, 82 id. 404. The only difference between the supposed case and that before us is, there the party seeks, by bill in equity, to set aside the sale, while here he has, by ejectment, repudiated, and had the sale set aside, in effect, and is seeking, also, to have the purchase money paid him through the aid of a court exercising, as to the particular question, equitable powers. The want of equity is just as obvious here as in the supposed case.

In *England* v. *Clark*, 4 Scam. 486, assumpsit was brought by the purchaser of a horse at a constable's sale, to recover of the plaintiff in execution the price he had paid, the horse having been subsequently recovered from him by a stranger, and it was held that the doctrine of *caveat emptor* applied, and that the action would not lie. It is, however, intimated in the prevailing opinion, notwithstanding the doctrine of *caveat emptor*, that the purchaser might be entitled to relief, either by bill in equity or by action of assumpsit against the constable or the defendant in execution; and Wilson, Ch. J., in a separate opinion, says: "If the mistake as to the ownership of the horse had been discovered before the officer had paid over the money, it appears to be well settled that upon an application to the court it could arrest the money in his hands for the benefit of the purchaser, and permit the officer to amend his return upon the execution so as to renew the levy upon the property of the debtor." And the same doctrine is declared to be applicable to a case in some respects

like the present, in *Mockbee* v. *Gardner*, 2 Harr. & Gill, 176, although the point was not necessary to be decided there. ARCHER, J., in that case, after alluding to the doctrine of *caveat emptor*, as applicable to executors and administrators, adds: "But while this exception from the general principle exists in their favor, we by no means intend to assert that they would not be answerable, in case of a failure of title, while the purchase money for the property sold remained in their hands, undistributed and unadministered. In such a case there would exist no well founded reason why they should not refund to a purchaser. Such a modified liability would subject them to no danger of pecuniary loss, and as long as the fund remained in their hands they might well be considered as liable, with other vendors, to the general doctrine of implied warranty of title."

Undoubtedly the executor here was under no obligation to make a covenant, and be bound thereby himself, alone, and in no case would a court of equity permit a burden in this way to be fastened upon an estate. But it is not unreasonable to assume that the covenant influenced, to some extent, the purchase. It was made for the benefit of the estate, and it is broken in consequence of the act of these devisees in disaffirming the sale. They lose nothing by his taking the money and discharging his covenant, especially as this, as we have seen, under all the circumstances, is but the just and equitable disposition of that money. As matter of natural right, the purchaser, having lost the land, should have back his money, there being no intervening conflicting rights. It certainly makes it no worse that in paying it back the executor discharges·a covenant he unnecessarily made in the deed which has been disaffirmed.

We do not see any objection to the ruling below, and the judgment must therefore be affirmed.

*Judgment affirmed.*