LOUIS BRUSCHKE *et al.*

*v.*

JAMES G. WRIGHT *et al.*

*Filed at Ottawa April 3, 1897.*

1. NOTICE—*an "innocent purchaser" must hold the legal title.* An innocent purchaser is one who holds the legal title to property, for which he has paid a valuable consideration without notice of any defects in the title.

2. SAME—*assignee of certificate of sale is charged with notice of defenses.* An assignee of a certificate of sale takes only an equitable title, and is chargeable with notice of all irregularities which may invalidate the sale, and with notice of all defenses which could be interposed against his assignor.

3. MORTGAGES—*purchaser at foreclosure sale subrogated to rights of mortgagee.* The purchaser of property at a foreclosure sale, or his assignee, will be subrogated to the rights of the mortgagee in the event that the sale is ineffectual to convey the title.

4. EQUITY—*decree ordering re-sale must protect rights of original purchaser or his assignee.* A decree ordering a re-sale of property for the benefit of heirs, upon failure of the purchaser at the original sale (whose money was applied upon the mortgage indebtedness) to buy the equity of redemption as agreed, must protect the rights of an assignee of the certificate of sale, purchased in good faith.

5. JUDICIAL SALES—*a re-sale must be made subject to redemption.* Where a re-sale of property once sold at foreclosure is ordered to be made by an officer of the court, such re-sale must be made subject to redemption.

*Wright* v. *Bruschke,* 62 Ill. App. 358, reversed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

This is a petition, filed, after leave granted on motion for that purpose, in a foreclosure proceeding, wherein decree had been rendered and sale had been made, praying for a re-sale of the premises, for a surrender and cancellation of the certificate of sale issued upon the making of the sale, and for an injunction against the purchaser at

the sale and the assignee of the certificate of sale, to restrain them from taking out a master's deed on the certificate of sale. The decree of the circuit court was substantially in accordance with the prayer of the petition. The case was taken by appeal to the Appellate Court by the defendant in error Wright. The Appellate Court agreed with the circuit court, so far as the latter held that there should be a re-sale of the premises, but differed with the circuit court in relation to other matters, and entered a judgment reversing the decree of the circuit court and remanding the cause, with directions to enter another decree which is referred to in the opinion. The cause is brought here by writ of error for the purpose of reviewing the judgment so entered by the Appellate Court.

The original bill was filed on June 7, 1892, by William Troost to foreclose a mortgage given by Charles J. Bruschke, the father of the present minor plaintiffs in error. Charles J. Bruschke conveyed the premises to Anna Bruschke, his wife, and Anna Bruschke afterwards died intestate, leaving Louis Bruschke and Ecenia Bruschke her heirs-at-law. After the deed by Charles to his said wife, she was divorced from him. After the death of Anna Bruschke, Frederick Ludewigs was appointed administrator of her estate, and Charles Kriewitz was appointed guardian of the minor children, Louis and Ecenia. Said Louis and Ecenia Bruschke, minors, and Frederick Ludewigs, administrator, were made defendants in the foreclosure proceeding. The minors answered by their guardian, Kriewitz; and, a guardian *ad litem* was appointed, who also filed an answer for them. Default was entered against the administrator, Ludewigs, and the cause was referred to a master in chancery. On January 28, 1893, a decree of foreclosure was entered therein, finding the amount due upon the mortgage to be $4740.97, and directing that the premises be sold by the master at public auction; and they were so sold on March 2, 1893.

Prior to this time, there had been some negotiation between the administrator of the estate and one Robert Cameron with reference to the purchase of said property by said Cameron for $10,000.00. This purchase was not, however, to be for $10,000.00 in cash, but title was to be acquired by Cameron through a sale in a proceeding for the foreclosure of the Troost mortgage; and Cameron was to pay in cash, at the sale under the decree of foreclosure, so much of the $10,000.00, as was necessary to pay off the amount of the principal and interest due upon the mortgage at the time of the sale, and the costs of the suit and expenses of the sale; and the balance of the $10,000.00 was to be paid on or before the expiration of the time of redemption from the foreclosure sale. The arrangement, however, or understanding with reference to the purchase of the property by Cameron for $10,000.00 was verbal, or oral only, prior to the making of the sale.

On March 17, 1893, the master made a report of sale, in which he stated, that Arthur C. Gehr bid for the property the sum of $4918.43 in cash, being the amount due upon the mortgage, together with costs, fees and charges, and that said sum was the highest and best bid. A certificate of sale, dated March 2, 1893, was issued by the master to Arthur C. Gehr as the purchaser of the property, in which certificate it is recited that the property was sold to Gehr on said second day of March for said sum of $4918.43 in cash, and reciting that that was the highest and best bid offered for the premises. A written agreement was then entered into, dated March 2, 1893, between said Gehr and Charles Kriewitz as guardian of said minors, in which, after reciting the entry of the decree of January 28, 1893, and the sale of the property on March 2, 1893, Gehr agreed that he would pay $10,-000.00 for said property, and that he would pay said sum of $10,000.00 in manner following, to-wit: said sum of $4918.43 in cash to said master on a receipt of his certificate of sale, and the balance, to-wit: $5081.57 in cash on

or before the day of the expiration of the time of redemption of said property from the sale thereof, if said property should not be redeemed from said sale during the time by law allowed for such redemption by any person entitled so to redeem, and on the further condition, that "this agreement shall not impair or affect in any manner the lien that the legal holder of said certificate of sale may have on said premises, or his rights thereunder, according to the statutes of the State of Illinois." There were minor provisions in said agreement to the effect, that said Gehr might retain out of said sum of $5081.57 interest at six per cent on said sum of $4918.43, and such sums as might be paid for the taxes of 1892 and 1893 and for insurance upon the building on the premises. By said agreement, signed by Gehr and said guardian, Gehr bound himself and his assigns to pay said money in the manner stated, provided said property was not redeemed from the sale at any time before the expiration of the time of redemption. This agreement, though dated March 2, 1893, was not actually signed and executed between the parties, until some time between March 8 and March 20. Whether it was so signed before March 14 does not appear from the evidence.

On the day of the sale, or the day after, Gehr paid to the master $200.00 in cash. Afterwards on March 14, 1893, Gehr paid to the master the balance of said sum of $4918.43, to-wit: $4718.43. On or before said 14th day of March Gehr sold and assigned the certificate of sale, and all his right, title and interest in and to the property therein described, to James G. Wright, the defendant in error, for the sum of $4918.43; and the record shows that James G. Wright gave Gehr his check for said last named amount on March 14, 1893.

The evidence shows, that, although Gehr bought the property in his own name, and took the certificate of sale in his own name, yet he bought the property for said Cameron. Gehr was to furnish the $10,000.00 for Cam-

eron, and, when the time of redemption expired and Gehr obtained a deed from the master, he was to deed the property to Cameron upon his payment of the $10,000.00. When Wright bought the certificate of purchase, he was told and understood, that the property would probably be redeemed before the time of redemption expired, and he purchased it as an investment, and for the purpose of obtaining the interest allowed by law during the time he was to hold the certificate. Cameron did not have the money to make the cash payment, and the money was obtained for that purpose by Gehr by transfer of the certificate of sale to Wright. Afterwards about the first of April or early in April, 1893, Cameron executed to Gehr a mortgage or mortgages to the amount of $10,000.00, or more, upon other property owned by Cameron, with a view of securing Gehr for the $10,000.00, which he was to advance for Cameron for the purchase of said property, or to enable Gehr to raise said sum of $10,000.00. For some reason, neither Gehr, nor Cameron, was able, at the time the redemption expired, to furnish the money to buy back the certificate of sale from Wright, or to make the deferred payment of $5081.57, or thereabouts, to the guardian of said minors.

The evidence shows, that James G. Wright had no knowledge of the negotiations which had taken place between Gehr and Cameron when he purchased the certificate of sale. When the time of redemption expired, Wright applied to the master for a deed upon the certificate; but learning about that time, or shortly before that time, of the arrangement between the guardian and Cameron, he offered to let Cameron, or the guardian, redeem the property, if they would pay him the amount which he had paid for the certificate and interest thereon.

The present petition was filed July 3, 1894, and makes Gehr and Wright and Cameron defendants thereto. It charges, that Gehr on behalf of Cameron bid the sum of $10,000.00 at the said sale, and sets forth the agreement

of March 2, 1893, between Gehr and Kriewitz, the guardian; it charges, that the clause in said contract, which has heretofore been quoted, was inserted therein by Gehr without the knowledge of said guardian, or of his attorney; it recites and admits, that Gehr paid the master said sum of $4918.43, and that the certificate of sale for that amount was issued to him. The petition charges, that Wright has no equitable interest or right in said certificate, but that the same was assigned to him without value; that said Gehr claims that he has not the money to make the payments provided for in said contract; that a scheme exists between Gehr and Wright, whereby they seek to defraud the said minors out of said balance of purchase money to which they are entitled. Wright filed an answer to said petition, setting up that he bought the certificate in good faith as an investment, and paid his own money for it, and had no knowledge of any agreement or understanding between Gehr and said minors or Gehr and said Cameron; and denying, that there was any scheme to defraud the petitioners, or any collusion between him and Gehr and Cameron. Gehr filed an answer admitting the agreement between himself and the guardian, and that it was made on behalf of Cameron; denying that the clause mentioned in the petition was inserted in the contract by him without the knowledge of the guardian, or his solicitor, or in fraud of the petitioners; setting up, that said Wright has offered to assign his right to a deed to Gehr or to Cameron and surrender the certificate, upon being paid the amount he paid for the purchase of it and interest thereon; further setting forth, that Cameron is unable to make the payment provided for in said agreement; and denying that there was any scheme or understanding between him and Wright, or between him and Cameron, to defraud the petitioners. Cameron also filed an answer, setting up that he was not present at the sale; that, in the summer of 1892, he had negotiations for the purchase of the premises from the

administrator; that Gehr suggested acquiring title by sale under the foreclosure proceedings; that he did not have the money to make the cash payment on the purchase; that Gehr was to manage the purchase for him and advance the money to make it; that about April 1, 1893, he executed a note and trust deed upon certain property he owned to secure Gehr for the amount he was to advance; that he did not learn, that the certificate had been taken in Gehr's name and assigned to Wright until the expiration of the period of redemption. Cameron in his answer pleads the Statute of Frauds.

On May 2, 1893, upon the back of the contract of March 2 between Gehr and the guardian, Gehr endorsed in writing an assignment and transfer of said contract, and all his interest therein, to Cameron, and therein agreed that, upon the delivery of the master's deed, he would convey the land to Cameron; and therein reciting that Cameron had delivered to him his note for $11,000.00, secured by trust deed upon land in Cook county. Of this $11,000.00, $1000.00 was a loan by Gehr to Cameron, all or most of which he afterwards repaid to Gehr; and the remaining $10,000.00 represented the money advanced, or to be raised, for the purpose of applying it upon the purchase of the property here in controversy.

ALLAN C. STORY, FRED W. STORY, and HERMAN WELK, for plaintiffs in error.

LEE & HAY, for defendant in error Wright.

MATZ & FISHER, (GEORGE W. SMITH, of counsel,) for Robert Cameron.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

When the sale was made by the master, there was some arrangement or understanding between Gehr and the guardian of the minors, that Gehr, acting for Cam-

eron, was to pay $10,000.00 for the property in contro-versy. Under this arrangement or understanding, the minors were to receive the benefit of the difference between $10,000.00 and what was necessary to pay off the amount due upon the mortgage upon the property and the costs and expenses of foreclosing that mortgage. It is the duty of a court of equity to secure for said minors, if possible, the benefit so to be derived from the arrangement made in their favor. In determining whether such a result can be accomplished, it will be necessary to consider in their order some of the contentions made by counsel.

*First*—It is claimed by counsel for plaintiffs in error, that the property was actually bid off for the sum of $10,000.00. We do not think that this claim is sustained by the proofs. The master and Gehr both swear that it was struck off for $4918.43. The report of sale of the master recites that it was struck off and sold for that amount. Said report of sale was confirmed by the court, after the guardian *ad litem* of the minors, and the attorney of the guardian *ad litem*, and the attorney of the guardian of the minors, had all endorsed upon the report that it was "all right." The master had no power to sell the property, the sale being subject to redemption, upon any other terms than for cash. The decree required him to sell for cash. The arrangement, by which the amount due under the decree of foreclosure was to be paid in cash and the balance of the purchase money on or before the expiration of the time of redemption, was one which the master had no power to make. The talk among the parties at the foreclosure sale, that $10,000.00 was to be paid for the property, is erroneously interpreted by some of the witnesses, as amounting to a bid of $10,000.00 made at the sale. But the arrangement for the purchase of the property at the sum of $10,000.00 was entered into in writing between the guardian and Gehr, acting for Cameron, after the sale took place.

*Second*—It is further claimed by counsel for plaintiffs in error, that, as Gehr agreed to pay $10,000.00 for the property in the manner stated in the contract between him and the guardian, it would be inequitable to allow him to take from the master a deed of the property upon the certificate of sale after having paid only $4918.43; and that Wright, being the assignee from Gehr of the certificate of sale, stands in no better position with reference to the rights of the plaintiffs in error than that occupied by Gehr, his assignor; and that Wright, when the certificate was assigned to him by Gehr, took it subject to all the equities, which existed in favor of the plaintiffs in error while Gehr was the holder of the certificate. There is much force in this contention.

The evidence shows, that Wright purchased the certificate in good faith, and without any actual notice of the equities of plaintiffs in error. He bought it as an investment, and paid his money for it; and the money, which he so paid for it, went to pay off the Troost mortgage, which was a valid incumbrance upon the property of the plaintiffs in error. But the doctrine is, that an innocent purchaser is one who has the legal title to the property, and has paid therefor a valuable consideration without notice of defects in the title. The purchaser of a certificate of sale does not take the legal title to the property, but has only an equitable title. His interest has been said to be "an incipient interest that may or may not ripen into an absolute estate." Inasmuch as the purchaser has not the legal title to the property bought, he of course assigns no legal title when he assigns the certificate. The assignee of such certificate is not regarded as being entitled to protection as an innocent purchaser, until he has obtained the legal title by a deed. Hence, we have held, that the assignee of a certificate of sale, issued to a purchaser under a judicial judgment or decree, is chargeable with notice of all irregularities that may invalidate the sale; he acquires no greater equi-

ties under the certificate than the purchaser, who is his assignor, has therein. He takes the certificate charged with all defenses which could be interposed against his assignor. The statute, which makes a certificate of sale assignable, provides, that "every person to whom the same shall be so assigned shall be entitled to the same benefits therefrom in every respect that the person therein named would have been if the same had not been assigned." (2 Starr & Curtis' Stat. chap. 77, sec. 29, p. 1403). We have held, in construing this statute, that an assignment of a certificate of sale places the assignee in the place of the assignor as respects the rights by virtue of the certificate, and that whatever equitable defenses could have been interposed against the certificate in the hands of the original purchaser can be interposed against an assignee from such purchaser. (*Chytraus* v. *Smith*, 141 Ill. 231; *Roberts* v. *Clelland*, 82 id. 538; 16 Am. & Eng. Ency. of Law, 833, and cases cited). What then is the equity, which can be enforced against Wright, as assignee of the certificate, in favor of the plaintiffs in error? It cannot be said, that Wright can be required to carry out the agreement made between Gehr and the guardian by paying the difference between $10,000.00 and what he paid for the purchase of the certificate of sale. He was not a party to that contract, nor could it be enforced against him. Indeed, the petition does not ask for an enforcement or specific performance of the contract, but it asks that the sale, made by the master, be set aside, and that the property be re-sold. The plaintiffs in error are entitled to enforce against Wright the equity, which they would have been entitled to enforce against Gehr if he had remained the owner of the certificate, of having a re-sale of the property. This is true, because, if it had not been for the agreement of Gehr to purchase the property for $10,000.00, they may have looked elsewhere for a purchaser for more than the amount due upon the mortgage. Again, the expectation of receiving the balance of

the $10,000.00, not bid at the sale by the master, from Gehr at the expiration of the time of redemption undoubtedly lulled them to sleep, and prevented their making any efforts to redeem the property from the master's sale. The proper relief to be awarded in such a case is a re-sale of the property. (*Imboden* v. *Hunter*, 23 Ark. 622; *Mason* v. *Martin*, 4 Md. 124; *Davoue* v. *Fanning*, 2 Johns. Ch. 252; *Campbell* v. *Johnston*, 1 Sandf. Ch. 148).

*Third*—The question then arises as to the terms, upon which a re-sale should be made when the court orders the property to be re-advertised and sold again. It is contended by counsel for plaintiffs in error, and the circuit court so ordered in its decree, that the defendants, Cameron, Gehr and Wright, or some one or more of them, should pay, within a time to be fixed, to said guardian, or the clerk of the court for the benefit of the minors, the remainder of said sum of $10,000.00 after taking out what was bid at the master's sale, and after taking out the deductions provided for in said contract between the guardian and Gehr, to-wit: $5081.57, or thereabouts; and that, in default of such payment, the property should be re-sold. The decree of the circuit court further orders, that the master shall receive no bid for said premises of a less amount than said sum of $5000.00, or thereabouts, with interest and costs; and that, out of said proceeds of sale, after paying costs, so much of the amount bid as is equal to the sum last mentioned should be paid to the guardian and that the surplus should be brought into court. In other words, the decree of the circuit court makes no provision for refunding to Wright the $4918.43 which he paid for the certificate of sale; but the effect of the decree is to compel him to lose that amount, as the decree makes provision for a sale of the property to realize the balance of the $10,000.00 over that amount, and no provision for realizing any part of the amount paid by Gehr at the sale, or paid by Wright for the assignment of the certificate. Such a result as this is wholly unjust,

166—13

and opposed to the principles of equity which are applicable to such cases.

It is one of the maxims of the court of chancery, that those, who seek equity, must do equity. (*Bennitt* v. *Star Mining Co.* 119 Ill. 9). The plaintiffs in error come into a court of equity and invoke the aid of that court to set aside a master's sale, which, as they claim, has realized to them less than they are entitled to receive; and, before they can secure such aid, they must offer to do what is equitable in the premises. To refuse to refund the amount paid at the sale, which was used for the purpose of discharging a mortgage upon their property and relieving it from the lien of such mortgage, or to make any provision in the decree of sale for the payment of the amount so advanced by the purchaser out of the proceeds of said sale, would be inequitable.

In *Kinney* v. *Knoebel*, 51 Ill. 112, there was a sheriff's sale which was void and unauthorized, and the purchaser had notice of that fact; but the money he paid for the land went to pay the creditors of the estate, and left a surplus in the hands of the executor; we there held, that, as the purchase money which such purchaser paid at the sheriff's sale, relieved the estate from all its indebtedness and gave a surplus to the executor for the benefit of the heirs, such heirs were bound to refund the money with interest as a condition to their redeeming the land.

In *Chambers* v. *Jones*, 72 Ill. 275, it was held, that, where infant defendants to a partition suit sought to set aside a sale of their land made under a decree in such suit by a court having no jurisdiction of their persons, they should be required, as a condition to granting them the relief sought, to refund to such purchaser whatever of the purchase money paid by him may have come into their hands.

In *Wickiser* v. *Cook*, 85 Ill. 68, where a sale was set aside as being one which a court of equity could not sanction, it was held, that the complainant, having come into a court of equity and asked to have the sale set aside,

equity would require a return of the amount of money received upon the sale; and it was there said (p. 72): "When she seeks equity she must do equity. It would not be equitable to restore to her the property and at the same time allow her to retain the consideration money which she received for the land.   *   *   *   This amount should have been returned, or the land ordered sold to satisfy the same, as a condition upon which the sale should be canceled." In *Brandon* v. *Brown*, 106 Ill. 519, we said (p. 526): "We have repeatedly decided, that, when a minor disaffirms a judicial sale by bill in equity, he must return, or offer to return, what he has received, if it be in his power." (See, also, *Smith* v. *Knoebel*, 82 Ill. 400; *Hamilton* v. *Wright*, 9 C. & F. 123; *Pearson* v. *Benson*, 28 Beav. 598; *Duncan* v. *Dodd*, 2 Paige's Ch. 99; 12 Am. & Eng. Ency. of Law, 235).

We regard the doctrine of subrogation as applicable to such a case as is here presented. Inasmuch as the money advanced by Wright was used for the purpose of paying off the mortgage upon the property, a court of equity will subrogate Wright to the rights of Troost, the original mortgagee, and regard the decree, which was in fact paid off by the proceeds of the master's sale, as subsisting for the purpose of being enforced for the benefit of Wright. The general doctrine is, that a purchaser at a foreclosure sale will be subrogated to the rights of the holder of the mortgage, which has been discharged with the purchase money, in the event that the sale is ineffectual to convey title to the property sold.

In *Brobst* v. *Brock*, 10 Wall. 519, it was held, that an irregular judicial sale, made at the suit of the mortgagee, even though no bar to the equity of redemption, passes to the purchaser at such sale the rights of the mortgagee as such.

In *Johnson* v. *Robertson*, 34 Md. 165, where a foreclosure decree was reversed on appeal and the property ordered to be sold again for the payment of the mortgage debt,

it was held that the original purchaser, having paid the money which was applied to the payment of the mortgage debt, was entitled to be subrogated to the rights of the mortgagee, and to have the mortgage treated as assigned to him.

So, where a purchaser at a sheriff's sale paid money on his bid which discharges the judgment, and the sheriff's deed turns out to be defective, he may be subrogated to the lien of the original judgment. (*Jones* v. *Smith*, 55 Tex. 383; *Short* v. *Sears*, 93 Ind. 505; *Davis* v. *Gaines*, 104 U. S. 386).

So, also, in *Bonner* v. *Lessley*, 61 Miss. 392, it was held, that a purchaser under a void trustee's sale, if the money paid by him is applied to the extinguishment of the trust debt, becomes the equitable assignee of the debt, and is subrogated to the rights of the original *cestui que trust*, and, as such, entitled to charge the land in equity with the debt.

The doctrine of subrogation, which is thus applied in behalf of the purchaser at a foreclosure sale, exists also in favor of the grantee of such purchaser. (*Rogers* v. *Benton*, 39 Minn. 39; *Richards* v. *Morton*, 18 Mich. 255; *Jordan* v. *Sayre*, 29 Fla. 100; *Bonner* v. *Lessley, supra*).

In *Bishop* v. *O'Conner*, 69 Ill. 431, we held, that a purchaser of land at an administrator's sale is not entitled in equity to be subrogated to the claims of the creditors which have been paid by the purchase money, where the title fails for want of jurisdiction in the court, ordering the same, over the person of the heir; but that was mainly on the ground that such claims against the estate are not regarded as a charge upon the real estate. In the *Bishop case*, a distinction was drawn between a purchase at an administrator's sale, as shown by the facts therein, and those cases, in which it is held that, where the purchase money at such a sale has been applied in removing an incumbrance upon the land of an estate, and the title fails, the purchaser may be subrogated to the lien so

discharged by his payment. In *Chambers* v. *Jones, supra,* the doctrine of *Bishop* v. *O'Conner, supra,* was endorsed; and, while it was there held that the doctrine of *caveat emptor* applies to purchasers at judicial sales, so that on the failure of title such a purchaser has no right to relief as against the heirs, and cannot have a decree against the land itself for the purchase money, yet it was there said, that, when the heirs are seeking relief against the purchaser, they will be decreed to refund the purchase money, upon the principle that he who seeks equity must do equity.

So in *Harts* v. *Brown,* 77 Ill. 226, where the directors of an incorporated company purchased the property of the company at a sale under a deed of trust, and the sale was held to be void in part, yet, on bill by the original stockholders against the directors, and a new company formed by them, to set aside the sale, it was held, that the directors, having paid the debts of the old company, were entitled in equity to be subrogated to the rights of the creditors whose debts they paid. Again, in *McHany* v. *Schenk,* 88 Ill. 357, it was held that a person, purchasing land at a sheriff's sale under execution and thus satisfying the judgment, is entitled in equity either to the land or to realize the money so paid, with interest, from the sale; and if such sale is set aside for an informality, as selling the land *en masse,* he will be subrogated to the lien of the judgment and the rights of the judgment creditor under the same. (See, also, *Mining Co.* v. *Mining Co.* 116 Ill. 170; *Lagger* v. *Mutual Union Loan Ass.* 146 id. 283).

Hence, we are of the opinion, that the decree of the circuit court was erroneous in not providing, that the amount paid by Wright for the certificate of sale should be repaid to him out of the proceeds of the re-sale of the property. We agree in the main with the judgment of the Appellate Court, which directs that, upon a re-sale, the defendant in error, Wright, should be refunded the amount paid by him, but we regard the judgment of that

court as erroneous in ordering the re-sale to be made without redemption. The statute provides that, "when any real estate is sold by virtue of an execution, judgment or decree of foreclosure of mortgage, or enforcement of mechanic's lien, or vendor's lien, or for the payment of money, it shall be the duty of the sheriff, master in chancery, or other officer, instead of executing a deed for the premises sold, to give to the purchaser a certificate describing the premises purchased by him, showing the amount paid therefor, or, if purchased by the person in whose favor the execution or decree is, the amount of his bid, the time when the purchaser will be entitled to a deed unless the premises shall be redeemed as provided in this act." (2 Starr & Curtis' Stat. p. 1395). Here, the sale, which is ordered to be made, is to be made by an officer of the court, and is to be made "for the payment of money;" it, therefore, comes within the requirement of the statute, which makes the sale subject to the right of redemption. Such was the view taken by this court in the case of *Locey Coal Mines* v. *Coal Co.* 131 Ill. 9.

The judgment of the Appellate Court, and the decree of the circuit court, are accordingly reversed, and the cause is remanded to the circuit court, with directions that, unless the defendant in error, Wright, be paid the amount paid by him for the certificate of purchase, with lawful interest from the time of such purchase, within a short time to be fixed by the court, a decree be entered, requiring a re-sale of the premises by the master for cash; and that, out of the proceeds of the sale, there be paid, *first,* the expenses, *second,* the amount which the defendant in error, Wright, should receive as above stated, and, *third,* that the residue be paid to the guardian of said minors; and that, at such sale, the master receive no bid for an amount less than the sum to be paid defendant in error, together with the costs of such sale, including the master's fees and commissions.

*Reversed and remanded.*