## HIBERNIAN BANK vs. W. A. EVERMAN et al.

1. NEGOTIABLE PAPER: *Secret equity in.  Purchaser for value without notice.*

A purchaser of negotiable paper for value, without notice, will not be bound by any secret equity therein in favor of a third person not connected with the legal title to the paper.   Where a trustee assigns negotiable paper in violation of the trust, the *bona fide* assignee will take it free from the trust, whether he bought it before or after maturity, and whether payable in this state or elsewhere.   The anti-commercial statutes of this state apply only to defenses between those connected with the legal title, and not to those asserting equities in such paper.   The same is true as to that principle of the law-merchant which requires the purchase to be made before maturity.

2. SAME: *Case in judgment.*

A partner who held notes which, both by law and by contract with his copartner, he was bound to apply to the payment of the liabilities of the firm, fraudulently transferred and converted them to his own use.   By subsequent transfer they came into possession of the Hibernian Bank.   The injured copartner, for himself and the firm creditors, sought to have them applied to the firm liabilities.   *Held,* that, there being nothing on the face of the notes to indicate their fiduciary character, the bank acquired a good title.

3. NEGOTIABLE PAPER: Lis pendens.

The doctrine of *lis pendens* cannot apply to a party purchasing negotiable paper beyond the jurisdiction, even if it applies to a purchase within the state. It is a mere representative of value and has no *situs*, and unless impounded in the hands of a receiver, or otherwise placed under the control of the court, an innocent purchaser cannot be affected by notice of the litigation.

APPEAL from the Chancery Court of *Washington* County. Hon. E. STAFFORD, Chancellor.

The opinion of the court contains all the material facts in the case.

It is assigned for error:

1. That the court erred in the interlocutory decree, and also in the final decree, in holding that appellant was not entitled to the full amount of the two notes held by them, and that

Everman was entitled to a lien for any part of the money due on said two notes.

2. In not charging said Everman with the sum of $1,000 and interest, received by him from J. R. Cox on the transfer of said Everman's interest in the partnership account of Cox & Everman, by said Everman to said Cox, on a dissolution of said firm.

3. In overruling the exceptions to the account of commissioner Ferguson, taken in behalf of appellant.

4. That said interlocutory and final decrees were made without any decree against Ferguson, assignee of the assets of said firm of Cox & Everman, and without any account rendered by said assignee of the avails of the assets of said firm, and without charging Ferguson with the amount thereof.

5. That said decrees were made on the bill without service of process on Hoy & Co., and without *pro confesso* against them.

6. Said outstanding debts of Cox & Everman are not proved and filed by the respective parties, nor otherwise produced in the cause. Said creditors are not made parties, nor does the decree direct their several alleged claims to be paid to them directly.

*A. H. Handy*, for appellant:

1. The facts in this case considered, it is clear that Hoy & Co. received the notes for a valuable consideration, without notice of fraud or defect in them, on February 28, 1871, on which day credit in full was entered by them for the notes of Ellen M. Cox; yet the payment was absolute *pro tanto* on that day, and they thereby became innocent holders of the notes. Not until March 11, 1871, did they receive notice that the validity of the notes was questioned, at which time their title was complete. See Love *v.* Taylor, 26 Miss., 567, 564; Emanuel *v.* Barnett, 34 ib., 56; Wren *v.* Hoffman, 41 ib., 616, 620; Commercial Bank *v.* Lewis, 13 S. & M., 226–231; Upshaw *v.* Hargrove, 6 ib., 292.

2. For the same reasons the court erred in overruling appellant's exceptions to the report of the commissioner.

3. It appears from the bill and answer that, after the dissolution, a large amount of the assets were placed in the hands of Ferguson to collect, and pay the outstanding debts of the firm, admitted by the answer of Everman to be " good and valid." No account of these assets was taken or rendered, and, though Ferguson was made a party defendant, *no proceedings were taken against him for an account, nor was any account required of him*, nor is it shown why these assets are not applied to the payment of the debts of the firm. It was error, in any view of the case, to charge the outstanding debts against Hoy & Co. and the bank, who had acquired rights in the notes in controversy, without showing that the assets of the firm in Ferguson's hands had failed or were insufficient to pay the debts.

*W. L. Nugent*, for appellees :

Gave a history of the case in brief, and insisted that as to the 6th assignment of error it does not exist in fact. The books of Cox & Everman were filed to establish the claims of the creditors, and the commissioner's report shows what claims were proved. Everman's claim for debts of the firm paid by him individually was proved under a special order of the court. As to the 5th assignment of error, Hoy & Co. did answer the bill, setting up title to the notes. As to the 4th assignment of error, the point was not made in the court below. As to the 3d assigment of error, it is not properly assigned. The $1,000 was to be paid, and was paid, by Cox to Everman. Upon the agreement of dissolution Cox was to pay the debts and give Everman $1,000 for his interest in the firm, and the appellant is not a creditor.

The 1st and 2d assignments present the only questions to be considered, and they are in effect one. The real questions are : Was the bank a *bona fide* purchaser for value, without notice, so as to entitle it to protection according to the commercial law ? Can the plea, if made out, avail in this state, the notes being made in this state and payable in this state ? Hoy & Co., in their answer, admit the allegations of the bill, and

charge fraud and collusion between Cox and Everman in the arrangement by which Ellen M. Cox became the possessor of the notes. Hoy & Co. had been the merchants of the firm of *Cox & Everman*, and knew all about the sale to Nelson. They accepted Nelson's bills for $9,000, and knew that Ellen M. Cox had no interest in the firm. Hoy & Co. say, in their answer, that since January, 1870, they held the four notes described in the bill, executed by John H. Nelson and payable to Ellen M. Cox, as collateral *to secure the payment of a large sum of money due and owing to them from defendant, Ellen M. Cox.* The plea does not allege a want of notice of the fact set out in the bill. There must be a special denial of notice of fraud by way of answer. Story's Eq. Pl., §§ 806, *et seq.*, 662, 661. If, however, the fact of notice was in doubt, the plea is otherwise objectionable. The defendant must have taken the notes *before they became due*, and for a valuable consideration. Swift *v.* Tyson, 16 Pet., 1; Gordon *v.* Simmons, 20 Pet., 365. The notes were first taken as *collateral* security *for an actual debt*, and on February 28, 1871, *after the maturity of the notes*, in payment of an actual debt. This does not make out the defense. Andrews *v.* Pain, 13 Pet., 65. See, also, 4 Cow., 667; 26 Miss., 397; 23 ib., 60; 30 ib., 27.

CHALMERS, J., delivered the opinion of the court.

Cox and Everman were partners in merchandise in the town of Greenville. Their connection was terminated in 1869 by a sale of the partnership stock and business to Nelson for $18,300. It was agreed between them that Cox should take all the assets of the firm, including the money and notes to be paid and executed by Nelson, and with them extinguish all the partnership liabilities, from which Everman was to be released and protected by him. Everman received $1,000 for the relinquishment of his interest in the assets. After this agreement, and without the knowledge of Everman, Cox procured Nelson to execute the notes to Mrs. Ellen M. Cox, his mother, instead of to himself, and then transferred them to Hoy & Co., of New Orleans,

at first as collateral security for, and subsequently in absolute extinguishment of, a debt due by Mrs. Cox to Hoy & Co. This seems to have been done not only in fraud of the agreement with his former partner, but with the express intention of defeating the right of the firm creditors to subject said notes to the payment of their claims. We think that Hoy & Co. must have known that the notes were assets of the firm, and must have suspected that they were being intentionally placed beyond the reach of its creditors. Hoy & Co. subsequently transferred, for value, one of the notes to Richard White, and the other two to the Hibernian Bank. The assignees had no notice of the character of the notes, nor of the perversion of them from their legitimate destination.

Before they had been recieved by White and the bank, and while they were held by Hoy & Co., sundry creditors of Cox & Everman filed their bill in the chancery court of Washington county against said firm and against Mrs. Ellen M. Cox and Nelson, alleging the personal insolvency of both members of the firm, charging the fraudulent purpose and acts of Cox, and praying to subject the amount due by Nelson on the notes to the payment of their claims.

To this bill Hoy & Co. were admitted as defendants, upon their own petition.

Everman answered, admitting substantially all the allegations of the bill, uniting in the charges of fraud against his former partner, and averring his own innocence. *Pro confesso* was taken as to Cox and mother. Hoy & Co. answered, denying all fraudulent collusion or knowledge, and claiming to be *bona fide* purchasers for value.

While this suit was pending and undetermined, Everman filed a separate bill against the Coxes, Nelson, Hoy & Co., Richard White, and the Hibernian Bank. He alleges that he has paid off most of the claims embraced in the creditors' bills since the filing thereof, besides various other debts due by his old firm. He reiterates the charges of fraud against Cox and his mother which were contained in the creditors'

bill and in his answer thereto ; alleges, upon information, that White and the bank are now the holders of the notes, by assignment from Hoy & Co., and charges that they all had notice of the trust character of the notes. White and the bank answered, admitting their ownership of the notes, but denying all knowledge or suspicion of anything improper in them or in the disposition which had been made of them.

After the taking of some proof the two causes were consolidated, and, upon final hearing, there was decree in favor of Everman, subjecting the notes to the payment of the debt of the firm and to the reimbursement to him of such as he had paid.

From this decree the bank appeals.

We have purposely omitted in this recapitulation some matters not necessary to be considered, under the view which we take of the merits of the controversy.

In saying that we think that Hoy & Co. had knowledge that the notes were partnership assets, and should at least have suspected, in view of their intimate connection with all the parties, that they were being fraudulently perverted, we state the case in its strongest possible aspect for complainant.

Under this view, was the decree correct? So far as the bank was concerned, it being certain that it had no knowledge of these facts, what is complainant's claim? He seeks as a former partner, in his own right and in that of the partnership creditors, to subject these notes in the hands of innocent holders to the satisfaction of partnership debts. This is a mere attempt to enforce an equity. The notes did not belong to him nor the creditors, legally or nominally. They were payable on their face to Ellen M. Cox. They should have been payable to J. R. Cox. The firm had ceased to exist. By the terms of dissolution all the assets passed to Cox and became legally his property. True, they stood charged by the agreement with Everman, as well as by law, with the payment of the firm debts.

If he violates this trust, and the notes come by successive

---

---

legal transfers into the hands of an innocent holder, for value, can the former partner or the creditor subject them to the firm liabilities to the prejudice of such holder?

This question is wholly unaffected by the fact that the notes were transferred in New Orleans. The result would be the same if the transfer had taken place in Mississippi. The notes should have been taken payable to J. R. Cox. Suppose, for illustration, that they had been so taken. This invests him with the perfect legal title, burdened with a secret equity. He transfers them to Hoy & Co., who we will suppose had knowledge of the trust. They then hold them subject to the trust. In turn they assign them to the bank, an innocent purchaser of the legal title. It seems clear that this last holder cannot be affected by an unknown equity. The notes, considered as assets of the firm, but with no ear-marks to distinguish them as such, certainly could not stand upon a higher footing than the goods of the concern. If, after the agreement between the parties, Cox had clandestinely run the stock of goods off and sold them either within or without the state, it will not be pretended that they could be reclaimed from an innocent purchaser by the former partner or by the creditors. It is not perceived how such a right can be asserted against the notes— the representatives of the goods.

. It is said, however, that the bank was a purchaser of the notes after maturity, and cannot therefore claim to be a purchaser for value without notice.

If this were true it would not alter the result. The principle which requires the purchase to be made before maturity only applies in favor of a party connected with the legal title, or at most to an equitable interest of which the purchaser had actual or implied notice. A purchaser of negotiable paper, even after maturity, cannot be bound by a secret equity in favor of an entire stranger to the paper, of which he neither had knowledge nor anything to put him upon inquiry.

But it is not true that the bank was a purchaser after maturity. The notes as drawn were indeed part due, but had been

extended, before maturity, by agreement between Hoy & Co. and the maker, Nelson, which extension was indorsed upon them.

The case is not affected in any way, as is supposed by solicitors for appellees, by the anti-commercial character of our laws. Our statutes apply only to defenses between maker and payee, or subsequent endorsers or endorsees of the paper—in other words, to parties who in some form are connected with the legal title. They have no reference to parties claiming to assert an equity in the paper, as was decided in Commercial Bank of Manchester v. Lewis, 13 S. & M., 226, a case strikingly analogous in its important features to the case at bar.

It is further urged that the bank bought *pendente lite* since her purchase was after the institution of the original suit by the creditors, though before the one by Everman, to which alone she was a party.

The doctrine of *lis pendens* cannot apply to a party purchasing negotiable paper beyond the jurisdiction, even if it applies to a purchase of said paper within the state. It is a mere representative of value, having no *situs* nor place of registration, and unless impounded in the hands of a receiver, or otherwise placed under the control of the court, it is difficult to see how an innocent purchaser can be affected by notice of the litigation. In Alabama and Pennsylvania a pending suit is held to be no bar to the purchase of such instruments within the state.

We think it certainly would not be as to purchasers in good faith outside the state. Winston v. Westfeldt, 22 Ala., 760 ; Story's Eq. Jur., § 405 ; Adams' Eq., 157 ; Hill v. Kroft, 29 Penn. St., 187.

The decree of the court below is reversed and the bill dismissed, so far as the Hibernian Bank is concerned. The other defendants not having appealed, the decree below must stand as to them.