ZEIS v. POTTER et al.

POTTER et al. v. ZEIS.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1901.)

Nos. 694, 697.

1. MORTGAGES—REPRESENTATIONS BY ASSIGNOR—ESTOPPEL.

One who sells notes secured by a second mortgage, falsely representing such mortgage to be a first lien, cannot invoke the record of a prior mortgage held by himself as notice to the purchaser, but as between them the purchaser is entitled to priority of lien.

2. BILLS AND NOTES—TRANSFER OF NONNEGOTIABLE INSTRUMENTS—RIGHTS OF PURCHASER.

The reasonable rule would seem to be that purchasers of overdue or nonnegotiable paper should take subject to the equities of all who appear or are known to have had an interest in it.

3. ASSIGNMENTS—CERTIFICATE OF PURCHASE OF REAL ESTATE—RIGHTS OF ASSIGNEE.

A borrower from a bank pledged as collateral, among other securities, a certificate of purchase of real estate at judicial sale; the consideration stated therein being $6.740. The certificate was in an envelope, which was indorsed with the figures "$4,750." On inquiry as to the discrepancy, the pledgor stated that a third person owned an interest of $2,000 in the certificate, and that he could only pledge the same for the amount of his own interest, which was $4,750. Whether the name of the third person interested in the certificate was asked for or given did not clearly appear. In fact, as between the pledgor and such third person, the latter was entitled to priority of interest in the certificate. A statute of the state (Hurd's Rev. St. Ill. c. 77, § 29) made such certificates assignable by indorsement, and declared the assignee "entitled to the same benefits therefrom in every respect that the person therein named would have been if the same had not been assigned." *Held*, that the bank was put upon inquiry, and took the certificate subject to the rights which might have been asserted as against the pledgor.

4. BANKS—NOTICE TO EMPLOYE—CUSTOM OF CONDUCTING BUSINESS.

Where a borrower from a bank presented collaterals to the assistant cashier, who was authorized to represent the bank in the transaction, and was directed by the latter, in accordance with custom, to take such collaterals to the note teller, who had charge of the collaterals to be checked up, notice to the teller in regard to the rights of a third person in one of the securities pledged was notice to the bank.

Appeal from the Circuit Court of the United States for the Northwestern Division of the Northern District of Illinois.

The appeal and cross appeal in these cases bring under consideration the respective rights of the parties to a certificate of sale of real estate by a master in chancery under a decree of foreclosure of a mortgage or trust deed. The original bill in the case was brought by the cross appellant, Edwin A. Potter, receiver of the National Bank of Illinois at Chicago, for the purpose of subjecting to sale certain personal property, including the certificate in

question, alleged to be held by the bank as collateral security for a debt of E. S. Dreyer & Co. to the bank. The appellant, Andrew R. Zeis, was allowed to intervene and file a cross bill, whereby he claimed that, to the extent of two thousand dollars and accrued interest, the certificate belonged to him in priority to the rights of the bank. The receiver, who alone was made defendant to the cross bill, answered, asserting ownership of the entire certificate. The finding of the master was in favor of Zeis, but the circuit court gave judgment awarding to each party an interest, but allowing to neither a priority. The facts are undisputed, and, as reported by the master, were, in substance, these: On July 13, 1889, E. S. Dreyer & Co. held and owned a promissory note for $3,000, secured by a trust deed of real estate, duly recorded, and on that day took of the owners of the property a second note for $2,000, money loaned, payable two years after date, with six per cent. interest, each semiannual installment of which was evidenced by a separate note, and all secured by a trust deed of the same property, which deed was duly recorded. These notes were made payable to an employé, but belonged to the firm of E. S. Dreyer & Co., who, within a few days after their execution, sold and caused them to be indorsed by the payee to the appellant, Zeis, who paid therefor $2,000 and the accrued interest; Dreyer and another member of the firm then representing, and Zeis believing and acting upon the representation, that the trust deed securing the notes was a first lien or mortgage on the premises described. The interest notes, as they became due, Zeis collected at the office of E. S. Dreyer & Co.; and in 1891, when the principal note became due, E. S. Dreyer & Co. extended the time of payment for two years, and delivered to Zeis four interest notes, evidencing the interest for the extended period, again telling him that his was a first mortgage. These interest notes were collected, as the first, at the office of E. S. Dreyer & Co., and again in 1893 another extension for two years was made, as before, and the interest notes therefor were handed to Zeis by E. S. Dreyer & Co., and, as they became due, were paid to Zeis at their office. The $3,000 note and mortgage, which meanwhile they had sold and transferred to a third party, and which on June 23, 1894, had become due, three days later were repurchased by E. S. Dreyer & Co., and were held and owned by them until August 22d ensuing, when, without the knowledge or consent of Zeis, they caused suit to be brought in the superior court of Cook county to foreclose both trust deeds. On July 16, 1895, nearly a year after the bringing of the foreclosure suit, Zeis, having gone to the office of E. S. Dreyer & Co. at their request, was told by Dreyer that the mortgage debtor did not pay interest or taxes, and they wanted to foreclose in his favor; that they would attend to it without bothering him, and get his money,—repeating that the security was a first mortgage and good. Zeis, not having had anything to do with, and knowing nothing about, foreclosures, then left the $2,000 note and trust deed with the firm. A few weeks thereafter Dreyer returned the papers to him. A week later Dreyer again took the papers, "for the court to look over once more"; and Zeis, having received them again from E. S. Dreyer & Co. two weeks later, has since had possession of them. He was shown, meanwhile, by one of the firm, the exhibit marks on the note and deed, and told that that showed the foreclosure of the property; and that, he testified, was all he knew. He was not told that a foreclosure suit had already been brought, nor that the suit was to foreclose two deeds; and he did not know of the first note and deed until 1897, after the failures of the National Bank of Illinois and of E. S. Dreyer & Co. The mortgaged premises under the decree of foreclosure so obtained were sold on February 29, 1896, for $6,750, to E. S. Dreyer & Co., to whom on the same day the master executed the certificate in question. On May 29, 1896, E. S. Dreyer & Co. borrowed of the National Bank of Illinois $100,000 for the purpose of reducing an overdraft on their checking account with that bank, giving at the time as collateral security for the loan, which was applied in the manner proposed, the certificate of purchase. The certificate was at the time in an envelope on which was indorsed in the handwriting of Berger, one of the firm of E. S. Dreyer & Co., and who was conducting the transaction, the following: "Eugene Prager, $4,750; due June 1, 1897. Master's Certificate." Prager was the owner of the mortgaged property. This envelope, with a bunch of other collateral, was

delivered with a list thereof by Berger to Moll, the assistant cashier of the bank. Moll glanced over the list, and directed Berger to take the same to Greenshields, the bill clerk or note teller of the bank, to be checked up. Berger thereupon went to Greenshields, who, according to custom when Berger presented collateral, checked up the list. Coming to the item set down in the list as "Master's Certificate, $6,740," Greenshield observed on the envelope the figures "$4,750," and called Berger's attention to the apparent mistake. Berger answered that it was not a mistake; that there was somebody else interested in the certificate to the amount of $2,000, which did not belong to E. S. Dreyer & Co., whose interest only, amounting to $4,750, he could pledge. Whether Zeis was then named as the one interested in the certificate is left in uncertainty; the testimony of Berger being that he believed he named him, but "would not be positive." On July 13, 1896, Zeis received of E. S. Dreyer & Co. the installment of interest which he supposed to have accrued and become due on the $2,000, and the payment was then indorsed by E. S. Dreyer & Co., upon the note. On December 21, 1896, the National Bank of Illinois and E. S. Dreyer & Co. suspended business, receivers were appointed, and in January following, by reason of rumors concerning the dealings of Dreyer & Co. in second mortgages, Zeis became for the first time suspicious of his own security, and on investigation first learned of the $3,000 mortgage, of the foreclosure of the two in one proceeding, of the sale of the property, the certificate of purchase, and the transfer thereof to the bank.

Amos C. Miller, for Andrew R. Zeis.

John D. Hood, for Edwin A. Potter.

Before WOODS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

To the extent that the certificate of sale represented the $2,000 mortgage, there can be no doubt that Zeis had the right to assert an interest prior to that of E. S. Dreyer & Co., by whose false representation he was induced to purchase the note in the belief that it was secured by a first mortgage. It is urged that, the $3,000 mortgage being of record, he was bound to take notice of it, and that his situation is the result of his own negligence. As against innocent purchasers buying without notice of his rights, the proposition would be unanswerable, but equity will not permit it to be invoked in favor of the willful wrongdoer. It is not for E. S. Dreyer & Co. to say that Zeis may not complain of the deceit which they practiced upon him, because if he had gone to the records "a slight examination would have disclosed the prior mortgage." Upon the facts stated, it may be said that Zeis had authorized Dreyer & Co. to procure a foreclosure of his mortgage, but he did not thereby sanction the procedure by which the two mortgages were foreclosed together, and merged in one decree in the name of another, representing Dreyer & Co.; and when he learned what had been done it was his privilege either to hold Dreyer & Co. liable for a conversion, or to repudiate the entire transaction and proceed to foreclose his mortgage, asserting equitable priority over Dreyer & Co. as holders of the other mortgage, or to assert an interest of like priority in the certificate. By taking the latter course he doubtless must be said to have ratified the foreclosure proceedings, including the sale under the decree, and

105 F.—43

the issue of the master's certificate of sale to the purchaser. In other words, for the purposes of the case, Dreyer & Co. must be regarded as having become the rightful holders of the title to the certificate, subject to the equity of Zeis; and from that starting point it must be determined whether the rights of Zeis were lost or impaired by the assignment of the certificate by Dreyer & Co. to the bank. The contention of the receiver is that by force of the transfer Zeis lost all interest. The court below decided that he had lost the right of priority, and adjudged that he and the receiver, without priority in either over the other, were owners of the certificate in proportions stated, and in the same proportions entitled to have and to hold as tenants in common the premises described.

A certificate of decretal or execution sale of real estate, it is clear, is not negotiable in the sense of the law merchant, though for certain purposes it has been held that a certificate of sale under a decree foreclosing a mortgage is in effect a mortgage during the period allowed for redemption. Wedgbury v. Cassell, 164 Ill. 622, 45 N. E. 978; Stephens v. Insurance Co., 43 Ill. 327. A statute of Illinois (Hurd's Rev. St. c. 77, § 29) makes such certificates assignable by indorsement, and declares the assignee "entitled to the same benefits therefrom in every respect that the person therein named would have been if the same had not been assigned"; and while, as insisted on behalf of the appellant, the supreme court of the state has held in a number of cases that by force of the statute an assignee takes such a certificate "subject to all equities to which it was subject in the hands of the assignor" (Roberts v. Clelland, 82 Ill. 541; Haworth v. Taylor, 108 Ill. 287; Chytraus v. Smith, 141 Ill. 231, 30 N. E. 450; Bruschke v. Wright, 166 Ill. 183, 46 N. E. 813), it is pointed out, on the contrary, that these cases disclose controversies between the mortgagor or his privies, on the one hand, and mortgagees or holders of certificates, on the other, and therefore do not affect the rule declared in other cases, that the purchaser of a mortgage, for value and without notice, "takes it free from secret or latent equities or interests of third persons in the mortgage itself" (Young Men's Christian Ass'n Gymnasium Co. v. Rockford Nat. Bank, 179 Ill. 599, 54 N. E. 297; Humble v. Curtis, 160 Ill. 193, 43 N. E. 749; Olds v. Cummings, 31 Ill. 188). This is a distinction which has been recognized as applicable to negotiable instruments assigned after maturity. In paragraph 726b of Daniel on Negotiable Instruments, it is said:

"The indorsee of overdue negotiable paper is not subject, it has been held, to equities which may have intervened between remote indorsers and indorsees, but only to those which exist, at the time of the indorsement to him, between the principal parties and the original holder, and between himself and his own indorser. Hill v. Shields, 81 N. C. 250. But, if there be an equity attaching to the bill or note itself, it has been held in England that it may be asserted against an indorsee after maturity by a third party who claimed the right to follow the bill. In re European Bank, Ex parte Commercial Bank. 5 Ch. App. 358; 1 Ames, Bills, 891; Chalm. Dig. Bills & N. 140. And, if the equity be a claim to some right in the instrument directly attached to it, we perceive no good reason why it may not be asserted against an indorsee after maturity by any party whatsoever."

In a subjoined note it is said:

"But see, contra, Crosby v. Tanner, 40 Iowa, 136; Bank v. Everman, 52 Miss. 500; Duke v. Clark, 58 Miss. 466. Compare Warren v. Haight, 65 N. Y. 171."

See, also, Tied. Com. Paper, § 295, and note.

The reason generally given for the distinction is thus stated in Silverman v. Bullock, 98 Ill. 10:

"Persons dealing in such securities can without difficulty inquire of the makers if any defense exists against them, but more than that it is not practicable to do. Of course, it would not be possible to discover, even by the utmost diligence, all persons that might have equitable rights in the subject-matter of the assignment, and the adoption of a rule that would let in latent equities to prevail against the assignee would be to ensnare dealers in such securities."

In respect to this, while the present case does not require a definite expression of opinion, it is deemed proper to suggest that the purchaser of overdue or nonnegotiable paper, if required to inquire of the makers whether they have any defense, may equally well be required to inquire into the rights of remote indorsers or others whose names appear on the paper. The payee and each successive indorsee, though he has parted with possession and title, may yet have an interest which, as against all but innocent purchasers for value and without notice, equity would protect; and, if convenience of inquiry is equivalent to notice of the rights of the maker, why not of any other, who, by reason of his name being on the paper, or by other means, the proposed purchaser is notified that he once had, and therefore may yet have, an interest? The maker often signs for accommodation, and the apparent indorser may be in fact the principal. The reasonable rule would seem to be that the purchasers of such paper should take subject to the equities of all who appear or are known to have had an interest in it. We need not, however, go to that extent now. In this case the bank was informed that there was an outstanding interest of $2,000, and that the holders of the certificate had a right to pledge only the remainder. Knowing this much, the bank was bound to inquire of the owner into the character and extent of that interest. The probability is that the name of the owner was given,—at least, it would have been given if asked; and, indeed, it is probable that, if the particulars had been asked of Berger, they would have been frankly stated. The bank was put upon inquiry. On the inquiry made it learned of an outstanding interest, and, not having gone further, it must be held to have had notice of what by proper effort it would have learned. It would have learned that the equity of Zeis was superior to all rights of E. S. Dreyer & Co.

It is urged, on the authority of Mechem, Ag. (1889) § 729, citing Congar v. Railway Co., 24 Wis. 157, and Bridge Co. v. Baker, 75 Ill. 140, that notice to the note teller, Greenshields, was not notice to the bank. It is not denied that Moll, the assistant cashier, to whom Berger presented the list of collaterals, had full power to represent the bank in the transaction; but, instead of taking the labor and responsibility himself, he simply "glanced over it,"—whether the bundle or list, or both, is uncertain,—and, according to custom,

directed Berger to go to the teller, "who had charge of the collaterals," to check them up, to see that everything on the list was delivered. To hold that the knowledge of the teller in this instance, acquired as it was in the very transaction committed in the usual way to his charge, should not be binding on the bank, would be to establish for such institutions an effective but most unreasonable and unfair method of evading just and wholesome responsibility under the law. It is hardly to be doubted that the teller communicated to Moll the information which he obtained. No proof to the contrary was offered. Besides, it is to be observed that the certificate of sale was presented to Moll himself with the same indorsement upon it which proved sufficient to put the teller upon inquiry; and, if Moll had been careful to observe, he doubtless would have made the same inquiry. If the duty to investigate was his alone, it was negligence on his part, attributable to the bank, that he did not recognize the significance of the notice put under his eyes.

The decree below is reversed, with direction to enter a decree which shall declare the interest of the appellant in the certificate of sale and in the property therein described to be prior and superior to all rights of the receiver.